KENNETTE FRAZIER PANHORST v. GEORGE M. PANHORST, JR.

No. 60

(Filed 20 January 1971)

**1. Trial § 33; Rules of Civil Procedure § 51— application of law to evidence — duty of court**

The trial court has the duty to charge the law applicable to the substantive features of the case arising on the evidence, without special request, and to apply the law to the various factual situations presented by the conflicting evidence. Rule of Civil Procedure No. 51(a), formerly G.S. 1-180.

**2. Divorce and Alimony §§ 8, 16— abandonment defined**

One spouse abandons the other, within the meaning of G.S. 50-16.2(4), where he or she brings their cohabitation to an end without justification, without the consent of the other spouse and without intent of renewing it.

**3. Divorce and Alimony §§ 8, 16— constructive abandonment**

One spouse may abandon the other without physically leaving the home; in that event, the physical departure of the other spouse from the home is not an abandonment by that spouse.

**4. Divorce and Alimony §§ 8, 16— constructive abandonment**

A constructive abandonment by the defaulting spouse may consist of either affirmative acts of cruelty or of a wilful failure, as by a wilful failure to provide adequate support.

**5. Divorce and Alimony §§ 8, 16— constructive abandonment — defect due to illness or physical disability**

There is no wilful failure, and so no constructive abandonment, where the defect of which the departing spouse complains is due to the illness or physical disability of the remaining spouse and his or her consequent inability to act.

**6. Divorce and Alimony §§ 8, 16— alimony without divorce — defense of constructive abandonment**

In an action by a wife for alimony without divorce, G.S. 50-16.2 does not preclude the husband, who has left the home, from proving as a defense that it was actually the wife who separated herself from him, though she did not leave the home.

**7. Divorce and Alimony § 16— defense of constructive abandonment — wife's failure due to physical condition — instructions**

In this action by the wife for alimony without divorce on the ground of abandonment wherein the husband asserted the failure of the wife to engage in sexual relations with him as justification for his departure from the home, the evidence required the trial court to instruct the jury that if the failure of the wife was not wilful but was due to her health and physical condition, such failure would not consti-

Panhorst v. Panhorst

tute a constructive abandonment of the husband by the wife and would not be justification for his departure from the home.

ON *certiorari* to the Court of Appeals to review its decision reported in 9 N.C. App. 258.

This is a suit for alimony without divorce. The plaintiff alleges that she and the defendant were married and lived together for 33 years until 9 October 1968, when the defendant abandoned and deserted her without just cause. No children were born of the marriage. She further alleges that the defendant, over a period of six months prior to the abandonment, committed adultery with one Billie Woodby Wyatt and that by reason of the abandonment she is entitled to alimony without divorce and counsel fees. She alleges that she is dependent upon the defendant, her total income being insufficient for her living expenses and that she and the defendant own a home as tenants by the entireties, in the purchase of which home a substantial part of her individual funds was invested. Prayer for relief was for an order allotting to the plaintiff reasonable subsistence and counsel fees pending the final determination of the action, for an injunction restraining the defendant from disposing of any of his property pending the final determination of this action, that she be given the sole possession of the home and for such further relief as may be just and proper.

The defendant by his answer denied the alleged abandonment and the alleged adultery. He further denied that the plaintiff is a dependent spouse and her allegations concerning her investment in the home. For a further answer he alleged that throughout their marriage the plaintiff was unresponsive to his overtures of affection and refused to engage in sexual relations with him except on rare occasions, for which reason he finally left the home which they had previously occupied together, he having at all times throughout the marriage been a dutiful and faithful husband and having done nothing to bring about the unaffectionate attitude of the plaintiff toward him. He also alleged as a further answer that he and the plaintiff own as tenants by the entireties a home, reasonably worth $45,000 and encumbered by mortgages for approximately $22,000, on which he is paying interest.

The matter came on for trial before a jury in the General County Court. The following issues were submitted:

1. Did the defendant abandon the plaintiff, as alleged in the complaint?

2. If so, was such abandonment without adequate cause or provocation on the part of the plaintiff, as alleged in the complaint?

The jury answered the first question "no" and, consequently, did not answer the second issue. Upon this verdict, the court entered judgment that the plaintiff recover nothing of the defendent and that the costs of the action be taxed against the plaintiff.

The plaintiff appealed to the Superior Court, making nine assignments of error. The matter was heard upon the record by Judge McLean who allowed seven of the assignments of error, vacated the judgment of the General County Court, and remanded the matter to that court for a new trial. The defendant appealed to the Court of Appeals, which reversed the judgment of the Superior Court and remanded the matter to that court for the entry of a judgment affirming the judgment of the General County Court. Thereupon, the plaintiff petitioned for *certiorari* to review the decision of the Court of Appeals, which petition was allowed.

At the trial in the General County Court, the plaintiff testified:

She and the defendant were married in 1935 and lived together until he left the home on 9 October 1968, since which time they have lived separate and apart. He told her he was going to leave the night before he did so. He packed his suitcase and left before daylight, saying only as he left, "I am sorry." Throughout the marriage, including the parting, there was little "bickering and fussing." The plaintiff did everything she could to keep the defendant from leaving the home. She begged him not to leave and did nothing to provoke him to do so.

During most of the years of their marriage, the plaintiff worked as a school teacher and in related employments. She presently has a position with the Asheville Day Nursery. Her salary, plus a small amount of income received from stocks and rental property owned by her, is not sufficient for her living expenses, doctors' bills, taxes and payments on the home. The major portion of their equity in the home is attributable to the

Panhorst v. Panhorst

investment therein of funds derived from the sale of certain properties which she had inherited. When the defendant left the home his salary was $9,500 per year, plus an expense account. Since his departure she has continued to live in the home, which is worth about $45,000.

Both the plaintiff and the defendant put their earnings into their support and the purchase of the home. The only problem they had in their marriage was with reference to their sexual relations and the defendant's feeling that the plaintiff was cold and unaffectionate toward him. This difficulty was due to her physical condition, for which she had for many years consulted physicians and received medical treatment. She was doing her best to bring about the correction of her physical disability.

Since the separation, the defendant has not paid the household expenses. He has left her alone in the house. He is 58 years of age and is employed as an inspector for an insurance company. The plaintiff is also 58 years of age and her general health is "fairly good." She owns a few shares of stock and some low grade rental property in Alabama and has a small savings account. Her take home pay from her job is $132 a month.

The defendant, called as a witness by the plaintiff, testified that his salary is $9,500 per year. He is obligated to pay notes secured by a mortgage on the home in which the plaintiff lives. He is keeping those notes current. When he left the home he left the furniture and personal belongings therein and left an automobile for the use of the plaintiff. The cause of his leaving the home was the plaintiff's rejection of his sexual desires and advances except at very infrequent intervals. When he left the home he knew that she had sought medical attention and had seen several doctors about the matter in an effort to correct her physical disability. This had continued for several years.

Billie Woodby Wyatt, called as a witness by the plaintiff, testified that she is 38 years of age and not presently married. She lives with her four year old daughter and works at the Social Security office in Asheville. She has known the defendant for a number of years. He is just an acquaintance. Prior to the institution of this action, she had seen the defendant at the restaurant where she generally eats. Occasionally they had lunch together but he did not come to her apartment. On one occasion, while she and her little daughter and one of the girls with whom

she works were in Charlotte, she picked the defendant up at the Charlotte airport upon his arrival from Boston and took him to the motel where she and her daughter were staying and where he also had a reservation. They did not spend any time together in his room or in hers on this occasion. They returned to Asheville together two days later. The court sustained the defendant's objection to the question as to whether she had seen the defendant on a date after the institution of this action.

The plaintiff also called as a witness Julius Cauble, a licensed private investigator. On a date after this action was instituted he observed Mrs. Wyatt. The court sustained the defendant's objection to testimony by this witness as to what he observed on that occasion. Had the witness been permitted to testify, he would have said that on that date and on a later date he observed Mrs. Wyatt enter her residence in the afternoon or early evening and observed the defendant leave the residence at 2 a.m. on one occasion and at 3 a.m. on another occasion, he not having observed Mrs. Wyatt leave it in the meantime.

The defendant offered no evidence, he having testified, as above stated, when called as a witness by the plaintiff.

*Thomas Walton and William J. Cocke for plaintiff appellant.*

*Robert E. Riddle for defendant appellee.*

LAKE, Justice.

The jury was instructed, "If you answer the first issue No, and thereby find that the defendant did not abandon the plaintiff, *as the Court has instructed you with reference to that issue,* then you would not come to consider the second issue * * * ." (Emphasis added.) That is, in that event, the jury would not consider the issue of whether such abandonment was or was not without adequate cause or provocation on the part of the plaintiff.

The verdict on the first issue was reached in the light of this instruction:

"Abandonment, within the meaning of the law, means that there is a separation of the parties one from the

Panhorst v. Panhorst

other. It also means that the separation is without the consent of the party from whom the separation is had and that the separation is without the intention of renewing the marital relationship and that the separation is willful, that is without adequate cause, excuse or justification.

\*     \*     \*

"Ordinarily, \* \* \* the spouse who separates or leaves is not justified in leaving the other spouse unless the conduct of the spouse who is left is such as would likely render it impossible for the withdrawing spouse to continue the marital relationship with safety, health and self-respect, and so, members of the jury, the Court instructs you that when you come to consider the first issue, the burden of proof, as the Court has told you, is upon the plaintiff upon this issue and when you come to consider this first issue the Court instructs you that if the plaintiff has satisfied you from the evidence and by its greater weight that in October, 1968, the defendant separated himself from the plaintiff and that this separation was without the consent of the plaintiff and that this separation was without the intention on the part of the defendant of renewing the marital relationship and that this separation was brought about without the existence of circumstances which would justify the defendant in withdrawing, that is, was absent such circumstances as would make it impossible for the withdrawing spouse, the defendant, to continue the marital relations with safety, health and self-respect; if the plaintiff has satisfied you of each of these elements from the evidence and by its greater weight, then it would be your duty to answer the first issue YES.

"On the other hand, \* \* \* if the plaintiff has failed to satisfy you from the evidence by its greater weight as to each of these elements, then it would be your duty to answer the first issue No."

The plaintiff assigned this instruction as error and also assigned as error that the court had failed to declare and explain the law arising upon the evidence, as required under G.S. 1-180. (See, Rule 51(a), Rules of Civil Procedure.) Both of these assignments of error were allowed by the Superior Court in ordering a new trial. The Court of Appeals reversed on the ground

Panhorst v. Panhorst

that the plaintiff did not set out in her exception and assignment of error her contention as to what the court should have charged.

[7] It is alleged in the complaint and admitted in the answer that the plaintiff and defendant were married and lived together until 9 October 1968, when the defendant left the home. The defendant's own testimony makes it clear that he left with no intent to return, though the plaintiff begged him not to do so. The sole question presented by the pleadings and the evidence related to whether he was legally justified in leaving and thus was absolved from the duty of paying alimony pursuant to G.S. 50-16.2(4). The plaintiff's testimony, if believed by the jury, is sufficient to establish that the cause of the condition, which the defendant assigns as the only reason for leaving, was her affliction with a physical ailment for which she was and had been for a long time undergoing medical treatment. The defendant's testimony was to the effect that he, when leaving, was aware that she had some physical difficulty for which she was undergoing medical treatment. Nowhere in the charge, except in reviewing the testimony, is there any specific reference to the physical condition or health of the plaintiff. The jury was not given any direction as to the bearing of the plaintiff's condition, if the jury believed it to be as the plaintiff had testified, upon the legal right of the defendant to leave her as he admits that he did. In this there was error requiring a new trial as ordered by the Superior Court.

[1] "It is the duty of the court to charge the law applicable to the substantive features of the case arising on the evidence, without special request, and to apply the law to the various factual situations presented by the conflicting evidence." Strong, N.C. Index 2d, Trial, § 33. Rule 51(a) of the Rules of Civil Procedure, formerly G.S. 1-180, "requires the judge 'to explain the law of the case, to point out the essentials to be proved on the one side or the other, and to bring into view the relations of the particular evidence adduced to the particular issues involved.' 53 AM. JUR., Trial, Section 509." *Conference v. Miles*, etc., 259 N.C. 1, 9, 129 S.E. 2d 600; *Lewis v. Watson*, 229 N.C. 20, 23, 47 S.E. 2d 484.

[2-5] G.S. 50-16.2 provides that a dependent spouse is entitled to an order for alimony when "(4) the supporting spouse abandons the dependent spouse." The statute does not define abandonment. One spouse abandons the other, within the meaning of this stat-

ute, where he or she brings their cohabitation to an end without justification, without the consent of the other spouse and without intent of renewing it. See, *Richardson v. Richardson,* 268 N.C. 538, 151 S.E. 2d 12. One spouse may bandon the other without physically leaving the home. *Bailey v. Bailey,* 243 N.C. 412, 90 S.E. 2d 696; *McDowell v. McDowell,* 243 N.C. 286, 90 S.E. 2d 544; *Blanchard v. Blanchard,* 226 N.C. 152, 36 S.E. 2d 919. In that event, the physical departure of the other spouse from the home is not an abandonment by that spouse. The constructive abandonment by the defaulting spouse may consist of either affirmative acts of cruelty or of a wilful failure, as by a wilful failure to provide adequate support. *McDowell v. McDowell, supra; Blanchard v. Blanchard, supra.* There is, however, no wilful failure, and so no constructive abandonment, where the defect of which the departing spouse complains is due to the illness or physical disability of the remaining spouse and his or her consequent inability to act.

[6, 7]   In an action by a wife for alimony without divorce, G.S. 50-16.2, like its predecessor, does not preclude the husband, who has left the home, from proving as a defense that it was actually the wife who separated herself from him, though she did not leave the home. *Caddell v. Caddell,* 236 N.C. 686, 73 S.E. 2d 923. If, however, the failure of the wife, asserted by the husband as justification for his departure from the home, was not wilful but was due to her health and physical condition, such failure would not constitute a constructive abandonment of the husband by the wife and would not be justification for his departure from the home. The jury should have been so instructed.

The judgment of the Court of Appeals is hereby reversed, and the matter is remanded to that court for the entry of a judgment by it further remanding it to the Superior Court for entry therein of a judgment granting the plaintiff a new trial on the ground of the above mentioned error in the charge of the judge of the General County Court.

Reversed and remanded.