ROBERT MICHAEL FUNGAROLI v. JUDITH DIANE FUNGAROLI

No. 8021DC902

(Filed 4 August 1981)

### 1. Trial § 3.2— hearing on attorney's fees—continuance properly denied

The trial court in a protracted domestic dispute did not abuse its discretion in denying plaintiff's motion for continuance where defendant filed a motion for attorney's fees and served affidavits in support of the motion; plaintiff filed no response whatever; neither party appeared in person at the hearing but, by their consent, the motion was heard in chambers with their counsel present; at that time plaintiff's counsel orally moved for a continuance, contending that he was entitled to cross-examine defendant about the sufficiency of her assets and income to pay her own legal fees; and plaintiff did not demonstrate any prejudice from the denial of the continuance by showing how his in-court examination of defendant would have produced a different result at the hearing.

### 2. Divorce and Alimony § 18.16— attorney's services on appeal—award of fees proper

An award of attorney's fees for services performed on appeal should ordinarily be granted, provided the general statutory requirements for such an award are duly met, especially where the appeal is taken by the supporting spouse.

### 3. Divorce and Alimony § 18.16— award of attorney's fees—sufficiency of evidence

The trial court did not err in awarding legal fees to defendant's counsel where there was ample evidence in the record, which was not contradicted by plaintiff, for the trial court to find that defendant, who was unemployed and without income of any source, did not have the economic means to defray the legal expenses arising out of plaintiff's multiple appeals from orders of the district court and decisions of the Court of Appeals.

### 4. Constitutional Law § 26.6; Divorce and Alimony § 28— annulment decree obtained in Virginia—no full faith and credit

The decree of a Virginia court annulling the marriage between the parties was not entitled to full faith and credit where plaintiff fraudulently procured the annulment in that he had affirmed the validity of the marriage from the outset of litigation in N.C. and had sought a divorce from bed and board in this State; while his claim for divorce from bed and board was still pending in N.C., plaintiff sought relief in a Virginia court on a basis inconsistent with that which he had previously maintained, to wit, that his marriage to defendant was null and void from its inception; and plaintiff received the annulment in Virginia on the grounds that defendant had fraudulently concealed her two prior marriages and the existence of her mental illness, but plaintiff was in fact aware of the marriages and the mental illness.

5. **Courts § 21.4; Constitutional Law § 26.6— validity of marriage—conflict of laws—no full faith and credit to Virginia annulment**

The validity of a marriage is determined by the law of the state with the most significant relationship to the spouses and the marriage, and a marriage valid where contracted is valid everywhere; therefore, a Virginia court erred in applying its own laws rather than that of N.C. in determining the validity of the parties' marriage, and the Virginia decree of annulment was not entitled to full faith and credit where the parties were married in this State, cohabited here, and their child was born here, plaintiff commenced this action for child custody and later filed a claim for divorce in N.C. courts, and prior to the date of the Virginia decree of annulment the courts of this State had entered several final orders awarding custody of the parties' child and alimony pendente lite to defendant.

APPEAL by plaintiff and cross-appeal by defendant from *Freeman* and *Harrill, Judges.* Orders entered 17 and 29 July 1980 in District Court, FORSYTH County. Heard in the Court of Appeals 2 April 1981.

The history of this litigation is as follows. This is plaintiff's third appeal to this Court from decrees of the Forsyth County District Court concerning the provision of support and award of custody of the minor child to defendant. To date, plaintiff has paid no alimony whatever, has not relinquished custody of the minor child to defendant, and has generally refused to comply with any of the orders of the District Court. In *Fungaroli v. Fungaroli* (I), the Court affirmed the trial judge's order requiring plaintiff to pay defendant alimony pendente lite and holding him in contempt for violation of a visitation order. 40 N.C. App. 397, 252 S.E. 2d 849, *appeal dismissed,* 297 N.C. 452, 256 S.E. 2d 805 (1979); *probable jurisdiction noted,* 444 U.S. 1031, 100 S.Ct. 700, 62 L.Ed. 2d 666, *appeal dismissed,* 446 U.S. 930, 100 S.Ct. 2144, 64 L.Ed. 2d 783 (1980). In *Fungaroli v. Fungaroli* (II), the Court affirmed the trial court's order transferring custody of the minor child to defendant. 43 N.C. App. 227, 258 S.E. 2d 497, *review denied,* 298 N.C. 805, 262 S.E. 2d 1 (1979). *See also Fungaroli v. Fungaroli* (III), 51 N.C. App. 363, 276 S.E. 2d 521 (1981), in which the wife, in a separate action, filed a complaint alleging that the husband, acting in concert with the child's paternal grandparents, removed the child from North Carolina to defeat her right to custody. There, the Court affirmed the denial of the grandfather's motion to dismiss for lack of personal jurisdiction because the trial court's finding under the long-arm statute, that he participated in

the wrongful removal of the child, was supported by competent evidence. In the instant appeal, plaintiff contests Judge Freeman's order of 17 July 1980 in which he awarded attorney's fees to defendant's counsel and that portion of Judge Harrill's order of 29 July 1980 ordering him to pay the amounts of alimony pendente lite which had accrued between the date of the original order until the date of the entry of an annulment decree by the Circuit Court of Fairfax County, Virginia on 17 April 1979. Defendant cross-assigns as error Judge Harrill's dismissal of her claims for permanent alimony and alimony pendente lite beyond the date of the entry of the Virginia annulment.

Further relevant facts, as gleaned from all of the records filed in the appeals between these two parties, shall be incorporated in the opinion below.

*Morrow and Reavis, by John F. Morrow, for plaintiff appellant.*

*Badgett, Calaway, Phillips, Davis, Stephens, Peed and Brown, by B. Ervin Brown II, for defendant appellee.*

VAUGHN, Judge.

Plaintiff first challenges the propriety of Judge Freeman's order granting attorney's fees to defendant's counsel. We hold that the judge acted properly in conducting the hearing on this motion and did not abuse his discretion in making the award and that the findings upon which the award was based were duly supported by sufficient competent evidence in the record.

[1] Plaintiff's first assignment of error, in this regard, is that the judge abused his discretion in denying his motion to continue the hearing on attorney's fees. It is well settled that a motion for continuance is not favored and that it should only be granted when the party seeking it demonstrates sufficient grounds for delay which will further the ends of substantial justice. *Fungaroli v. Fungaroli, supra,* 40 N.C. App. 397, 400, 252 S.E. 2d 849, 851. Plaintiff has not met this burden here. Defendant filed the motion for attorney's fees on 17 June 1980 and served affidavits in support of the motion upon plaintiff prior to the day of the hearing. Plaintiff, however, filed no response whatever, in the form of a reply or opposing affidavits, to the motion. Neither party ap-

peared in person at the hearing held on 17 July 1980, but, by their consent, the motion was heard in chambers with their counsel present. Plaintiff's counsel, at that time, orally moved for a continuance contending that he was entitled to cross-examine defendant about the sufficiency of her assets and income to pay her own legal fees. In such circumstances, we cannot say, as a matter of law, that Judge Freeman abused his discretion in denying a last minute motion for further delay, in this protracted domestic dispute, where both parties appeared through counsel and agreed that the hearing should be heard in chambers. Moreover, on this record, plaintiff cannot demonstrate any prejudice from the denial of the continuance, *i.e.*, by showing how his in-court examination of defendant would have produced a different result at the hearing, where he did not present any evidence to rebut defendant's affidavits supporting her entitlement to an award of attorney's fees. The assignment of error is overruled.

Plaintiff's assignments of error, two through six, attack the award of attorney's fees on the grounds that the legal conclusions were erroneous and the findings were not supported by the evidence. These assignments of error lack merit and are overruled.

**[2]** At the outset, we hold that Judge Freeman correctly concluded that an award of attorney's fees for services performed on appeal should ordinarily be granted, provided the general statutory requirements for such an award are duly met, especially where the appeal is taken by the supporting spouse. This appears to be the majority rule, and there is nothing in our statutory or case law that would suggest that a dependent spouse in North Carolina is entitled to meet the supporting spouse on equal footing, in terms of adequate and suitable legal representation, at the trial level only. *See Clark v. Clark*, 301 N.C. 123, 136, 271 S.E. 2d 58, 67 (1980); G.S. 50-13.6 and 50-16.4; 24 Am. Jur. 2d Divorce and Separation § 591 (1966). In sum, an award of counsel fees is appropriate whenever it is shown that the spouse is, in fact, dependent, is entitled to the relief demanded, and is without sufficient means whereon to subsist during the prosecution and defray the necessary expenses thereof. *Hudson v. Hudson*, 299 N.C. 465, 263 S.E. 2d 719 (1980).

[3]   In the instant case, Judge Freeman concluded, as a matter of law, that defendant had met the foregoing requirements for entry of the award. His conclusions in this respect were based, in part, upon the following findings:

"7. That during the entire pendency of this action, up to and including the entry of this Order, the defendant has been without sufficient means to subsist during the prosecution or defense of this suit and to defray the necessary expenses thereof, and has been entirely dependent upon the plaintiff, Robert Michael Fungaroli, for her support.

8. That at all times subsequent to the entry of this Court's Order on March 1, 1978, up to and including the present date, it has clearly appeared from the evidence that the defendant is entitled to the relief demanded in the action.

9. That because of the defendant's failure to pay any temporary alimony pursuant to the March 1, 1978 Order herein, and especially that the defendant's refusal to pay said temporary alimony on and after the decision of the United States Supreme Court, the Court concludes as a fact that the plaintiff herein has proceeded throughout in bad faith, and with a blatant disregard for the lawful Orders of the Courts of this State, as well as the United States Supreme Court.

10. That counsel for defendant, at each stage of the litigation herein, up to and including the present date, has been called upon to render legal services to the defendant which have included the research and preparation of briefs often involving complicated questions of procedure and constitutional law; that the constitutional question presented for ultimate review by the United States Supreme Court required counsel for defendant to utilize skills of an extraordinary nature, and that copies of the briefs submitted to the Court, along with the transcript of oral argument, make it clear to this Court that the representation provided to defendant in the United States Supreme Court was superior in every way. The Court further finds as a fact that the time expended by counsel for defendant in representation in this Court, the North Carolina Court of Appeals, and the United States Supreme Court, was more than reasonable in light of the task required."

These findings unquestionably authorized the award. Plaintiff, however, excepted to finding number seven, *supra*, contending that it was not supported by evidence in the record. We disagree.

The trial judge's findings are, of course, conclusive and binding on appeal if they are substantiated by any competent evidence. *Seders v. Powell, Comr. of Motor Vehicles*, 298 N.C. 453, 259 S.E. 2d 544 (1979); *Fungaroli v. Fungaroli*, 51 N.C. App. 363, 367, 276 S.E. 2d 521, 524 (1981). Here, the record before Judge Freeman included defendant's answer and counterclaim, filed 28 February 1978, in which she alleged that plaintiff had not provided her with any subsistence and that she was presently unemployed, without income from any source. In addition, the record included Judge Tash's prior order of 1 March 1978 awarding defendant alimony pendente lite. In that order, the court found:

> "That the defendant is presently unemployed and has been unemployed each and every day subsequent to her hospitalization which commenced on December 21, 1977, and ended on February 16, 1978; that the defendant has no income from any source whatsoever at the present time, and has no residence of her own other than that being presently provided on a temporary basis by her relatives.
>
> . . . .
>
> That at no time subsequent to December 21, 1977, has the plaintiff provided the defendant with any subsistence in any form."

Defendant also introduced an affidavit showing that she had been employed for one year with an average gross weekly pay of $143.47 and that this employment terminated 15 May 1980. Defendant further presented evidence that she had been allowed to proceed in forma pauperis in plaintiff's appeal before the United States Supreme Court. [We also note that defendant was permitted to proceed in forma pauperis in the instant appeal by order of this Court on 31 July 1980.] Viewed in this light, we are compelled to hold that there was indeed ample evidence in the record, which was not contradicted by plaintiff at the hearing or otherwise, for Judge Freeman to find that defendant did not have the economic means to defray the legal expenses arising out of plain-

tiff's multiple appeals from orders of the District Court and decisions of this Court. We, therefore, affirm the order entered 17 July 1980 awarding legal fees to defendant's counsel.

[4]   The threshold issue, with respect to plaintiff's remaining assignments of error and defendant's cross-assignment of error, is whether Judge Harrill correctly concluded that the 17 April 1979 decree of a Virginia court, annulling a marriage duly contracted in North Carolina, was entitled to full faith and credit under Art. IV, § 1 of the United States Constitution. A full examination of the following facts and circumstances of this lengthy litigation persuades us that our courts are not bound to give effect to the Virginia annulment; consequently, the trial court erred in granting partial summary judgment in plaintiff's favor on this basis.

First, it is necessary to understand what had transpired in this action in *our* judicial system before the Virginia court entered the decree of annulment. The Fungaroli dispute began when plaintiff filed a complaint in the Forsyth County District Court on 21 December 1977 requesting that he be awarded the care, custody and control of the minor child born of his marriage to defendant. Temporary custody of the child was awarded to plaintiff in an ex parte order on the same day. In his complaint, plaintiff alleged that the parties were lawfully married in Forsyth County, North Carolina, in 1977. In her answer, filed on 28 February 1978, defendant also stated that the parties were lawfully married in 1977. She sought a custody award in her favor and the recovery of alimony pendente lite and reasonable attorney's fees. The court subsequently entered an order on 1 March 1978 granting defendant's request for alimony pendente lite. That order was based, in part, upon the conclusion of law that plaintiff was the supporting spouse and defendant was a dependent spouse within G.S. 50-16.1(3) and (4). Plaintiff appealed from that order and argued, among other things, that the trial judge had failed to find the existence of a marital relationship between the parties. This Court responded to this contention as follows: "Both plaintiff and defendant allege they are married to each other. This is a judicially established fact and is not required to be stated by the court." *Fungaroli v. Fungaroli*, 40 N.C. App. 397, 399, 252 S.E. 2d 849, 850 (filed 20 March 1979). On 7 March 1978, the District Court held a show cause hearing upon defendant's motion that plaintiff had failed to comply with a prior

Fungaroli v. Fungaroli

visitation order. The court found that "the plaintiff has fled to the state of Virginia for the sole purpose of obstructing the order of this Court dated February 18, 1978," adjudged plaintiff to be in civil and criminal contempt, and issued an order for his arrest. Plaintiff then filed a reply to defendant's counterclaim on 15 March 1978 in which he again alleged that the parties were lawfully married and sought, among other things, a divorce from bed and board from defendant. On 2 June 1978, the District Court awarded permanent custody of the child to plaintiff. In that order, the judge specifically found that the parties were lawfully married on 3 March 1977. On 8 August 1978, the District Court found that there had been a material and significant change in circumstances affecting the best interest, health and welfare of the child and ordered plaintiff to transfer custody of the child to defendant and not remove him from the State of North Carolina. Plaintiff has never complied with that order. All of the foregoing occurred before 17 April 1979.

Second, it is necessary to understand the circumstances under which the Virginia decree of annulment was entered. Sometime in 1978, while his action for child custody and divorce from bed and board was still pending in North Carolina, plaintiff instituted an action in the Circuit Court of Fairfax County, Virginia, for an annulment of the parties' marriage. That court applied Virginia law to ascertain the validity of the marriage and granted the annulment based upon its findings that

"the Defendant knowingly and with intent to deceive concealed from the Complainant knowledge of her pre-existing schizophrenic mental condition and her prior involuntary mental commitments, her two prior marriages and divorces and the role that her mental condition played in the deterioration of such prior marriages; that in reliance upon such concealment, the Complainant entered into marriage with the Defendant; that had the Complainant been informed of the Defendant['s] mental condition and its effect upon her prior marriages, he would not have entered into marriage with her; that such fraudulent concealment goes to the essentials or fundamentals of the marital relationship and deprives the marriage contract of the intelligent consent necessary to its validity."

On 25 February 1980, the Supreme Court of Virginia refused defendant's petition for appeal from the annulment decree because it found "no reversible error in the judgment complained of." The record does not disclose what evidence was presented to the Virginia lower court, and, as a consequence, we do not know whether that court was fully apprised of the nature of the proceedings that had already been conducted, as well as those that were still pending, in the courts of this State.[1]

The thrust of the full faith and credit clause is that the courts of one state must honor and give effect to valid final judgments entered by the courts of a sister state, the policy being that issues or causes already fully litigated between the same parties should not be reexamined or decided anew. Nonetheless, the final judgment of another jurisdiction may be collaterally attacked upon three grounds: (1) lack of jurisdiction; (2) fraud in the procurement; or (3) that it is against public policy. *Howland v. Stitzer*, 231 N.C. 528, 58 S.E. 2d 104 (1950); *McGinnis v. McGinnis*, 44 N.C. App. 381, 261 S.E. 2d 491 (1980). The Virginia decree of annulment is subject to attack on two of these grounds.

First, this record supports the conclusion that plaintiff fraudulently procured the annulment in Virginia. In our courts, plaintiff had affirmed the validity of the marriage from the outset of the litigation and had filed a reply for a divorce from bed and board. Indeed, there had been specific findings in orders of the Forsyth County District Court that these parties were lawfully married under the laws of this State and that plaintiff was a supporting spouse and defendant the dependent spouse for purposes of an award of alimony pendente lite to defendant. Nonetheless, while his claim for a divorce from bed and board was still pending in North Carolina, plaintiff sought relief in a Virginia court on a basis inconsistent with that which he had previously maintained,

---

1. It is also not clear whether defendant made a general or limited appearance in the Virginia courts for the purpose of contesting the annulment action. The judgment of the Virginia Circuit Court simply states that both parties were "properly" before it. Defendant, however, in an affidavit filed with the Forsyth County District Court, says that she "did not testify at the hearing on the annulment inasmuch as my Virginia attorney [Fairfax Legal Aid Society, Inc.] advised me that it would be unnecessary inasmuch as under North Carolina law there existed no grounds for annulment. I never made any appearance whatsoever, except through counsel, in the Virginia Court."

to wit, that his marriage to defendant was null and void from its inception. Specifically, plaintiff received an annulment in Virginia on the grounds that defendant had fraudulently concealed her two prior marriages and the existence of her mental illness. It is obvious that plaintiff procured this decree in his favor through fraud or perjury where: (1) the marriage license issued by the registrar of Forsyth County, signed by both parties, discloses on its face that defendant had been married twice before, with both unions ending in divorce; and (2) plaintiff affirmed his prior knowledge of defendant's mental illness by alleging in his original complaint filed in the Forsyth County District Court on 21 December 1977 that "[d]efendant has had a mental illness which has recurred frequently in the past 4 to 5 years."[2]

Second, and more importantly, under the circumstances of this case, it would violate a strong public policy of the State of North Carolina to accord full faith and credit to the Virginia decree where, after repeatedly confirming the validity of his marriage in his own pleadings before our courts, and while he continued blatantly to disregard the lawful orders of our courts, plaintiff instituted an out-of-state action for an annulment, with this litigation, which he commenced, still pending here. In North Carolina, the situs of the marriage, plaintiff first said one thing, that he was entitled to a divorce from his lawfully wedded wife, but, in Virginia, he later said something entirely different, that he was entitled to an annulment from his wife because they were not lawfully wedded. Plaintiff's reason for changing his tune is manifest: only a marital dissolution by annulment would absolutely extinguish the defendant wife's rights to permanent alimony.

[5]  Moreover, this North Carolina marriage was annulled in Virginia on grounds not recognized in this State. *See* G.S. 51-3; 1 Lee, N.C. Family Law § 17 (4th ed. 1979). The general conflicts rule is that the validity of a marriage is determined by the law of the state with the most significant relationship to the spouses and the marriage and that a marriage valid where contracted is valid everywhere. Restatement (Second) Conflicts of Laws § 283 (1971). North Carolina has the most significant and substantial relation-

---

2. Defendant also filed an affidavit in this cause on 22 July 1980, stating that she revealed her mental condition and two previous involuntary commitments to plaintiff in December 1975, prior to their marriage in 1977.

ship to this marriage and subsequent marital dispute. The parties were married here, cohabited here, and their child was also born here. Plaintiff commenced this action for child custody and later filed a claim for divorce, in our courts. Prior to 17 April 1979, the date the Virginia court entered the decree of annulment, the courts of this State had entered several final orders awarding custody of the child and alimony pendente lite to defendant. In these circumstances, the Virginia court unquestionably erred in applying its own law, rather than that of North Carolina, to determine the validity of the marriage.[3] Moreover, a recent decision of the United States Supreme Court persuades us that the Virginia court's choice of its own law in this case was arbitrary, fundamentally unfair and violated the Due Process and Full Faith and Credit clauses of the Federal Constitution.[4] See Allstate Ins. Co. v. Hague, 449 U.S. 302, 101 S.Ct. 633, 66 L.Ed. 2d 521 (1981).

For the foregoing reasons, we hold that Judge Harrill incorrectly concluded that the Virginia decree of annulment was entitled to full faith and credit by the courts of North Carolina. The portions of his 29 July 1980 order granting plaintiff's motion for summary judgment and dismissing defendant's claims for permanent alimony and alimony pendente lite beyond 16 April 1979 on the basis of that decree are, therefore, reversed, and this cause is remanded for the resolution of the remaining issues, raised by the pleadings, which are still pending in the Forsyth County District Court.

Our disposition of the issue concerning the effect of the Virginia decree renders any discussion of plaintiff's remaining assignments of error unnecessary.

The order of 17 July 1980, awarding attorney's fees to defendant's counsel, is affirmed.

3. We also seriously question whether the Virginia court correctly applied its own law in granting this annulment. See, e.g., Sanderson v. Sanderson, 212 Va. 537, 186 S.E. 2d 84 (1972), where the Virginia Supreme Court held that misrepresentation as to prior marital status is not grounds for an annulment in that state.

4. It occurs to us, in addition, that these same constitutional principles would seem to have required the Virginia court to give effect to the parties' admissions in their pleadings, filed in our courts, that they were lawfully married, as well as the findings in various Forsyth County District Court orders which were necessarily based upon the existence of a valid marriage in North Carolina. See Fungaroli v. Fungaroli, supra, 40 N.C. App. at 399, 252 S.E. 2d at 850.

The order of 29 July 1980 is reversed to the extent it accorded full faith and credit to the out-of-state decree in dismissing defendant's claims for permanent alimony and alimony pendente lite.

Affirmed in part; reversed in part.

Judges CLARK and WELLS concur.