SHIRLEY PATTON v. DAVID E. PATTON

No. 8514DC153

(Filed 17 December 1985)

1. **Divorce and Alimony § 8— abandonment—no justification—wife did not consent**

    The trial court did not err in an action for alimony by concluding that defendant had abandoned his wife. There was no dispute that defendant husband did not intend to return to the marital home after 8 March 1981; there was no justification for defendant's departure because the wife throughout the marriage was a capable homemaker and good mother, the couple enjoyed recreational activities with family and mutual friends, and the wife sought counseling for the couple when problems arose in the relationship; and the wife did not consent to the separation as a legal matter where she gave defendant an ultimatum to either faithfully commit to the marriage or to make a clean break because she continued her efforts to preserve the marriage even after the separation. N.C.G.S. 50-16.2(4) (1984).

2. **Divorce and Alimony § 16.8— alimony—husband's income at date of hearing—no specific finding**

    The trial court did not err by not making a specific finding as to defendant's income at the date of the hearing in 1984 in setting child support and alimony where the court made findings as to the defendant's gross income in the years 1978 through 1982; money received from the defendant's profit-sharing plan in 1982; the amount of money deposited in defendant's personal checking account in 1983; the perquisites defendant enjoyed from his company, such as an entertainment budget and the use of a car; the financial prospects of defendant's company, which were excellent; the stability of the number of employees of the defendant's company; and the $1,000 per month salary his present wife was receiving from his company.

Patton v. Patton

3. **Divorce and Alimony § 30— alimony—value of husband's business—findings sufficient**

The trial court did not err in an action for equitable distribution by finding that the value of defendant husband's interest in his business was $85,000 and that he was the sole or 96% owner of that business where the trial court specifically indicated that it took into account the value placed by the husband himself on his business interests in valuing the company; the record contained an insurance proposal prepared by the husband in July 1980, wherein he valued his business interests at $215,000 and stated there were no liabilities; the court did not limit itself to the figure contained in the insurance proposal, but took other relevant facts and circumstances into consideration; and the court stated that it was valuing the husband's interests in the business "at the relevant time for valuation for equitable distribution." Although specifying the exact date of valuation might have been preferable, this finding does not demonstrate and the husband did not show that the trial court used an incorrect date in valuation.

4. **Divorce and Alimony § 30— equitable distribution—unequal distribution of marital property—no abuse of discretion**

The trial court did not abuse its discretion by ordering an unequal distribution of marital property where the court's order stated that the court "attempted to consider all of the factors included" in N.C.G.S. 50-20(c); the court enumerated seven of the twelve factors to which it paid particular attention; and the court made reference to factual findings in the order which contained information relevant to that particular statutory factor for each of the seven factors.

5. **Divorce and Alimony § 27— alimony and child support—second award of attorney fees—not double award**

The trial court did not err in an action for alimony, child support, equitable distribution, and attorney fees by awarding counsel fees of $3,000 to one of the wife's attorneys for services rendered in connection with the child support and alimony aspects of the hearing. A $4,000 counsel fee awarded to the wife at an earlier hearing did not make the second award an impermissible "double award" because N.C.G.S. 50-13.6 (1984) authorizes recovery of counsel fees in child support actions and N.C.G.S. 50-16.4 (1984) makes counsel fees recoverable in actions for permanent alimony. The fee awarded to the wife at the earlier hearing did not cover and was not intended to cover any legal fees the wife might subsequently incur, and the court specifically termed the earlier $4,000 award "attorneys' fees *pendente lite.*"

6. **Divorce and Alimony § 27— award of attorney fees—findings inadequate**

The trial court erred by awarding attorney fees in an action for alimony, child support, equitable distribution, and attorney fees where there was no finding that the supporting spouse refused to provide adequate support under circumstances existing at the time the action was initiated; there was no indication of whether support provided after the separation was adequate, especially in light of the husband's unilateral reduction of that support from time to time; and there were no factual findings upon which a determination of

the reasonableness of the award could be based other than the trial court's statement that the expended time was "reasonably necessary."

Chief Judge HEDRICK concurring in part and dissenting in part.

APPEAL by defendant from *LaBarre, Judge.* Judgment entered 28 August 1984 in District Court, DURHAM County. Heard in the Court of Appeals 23 September 1985.

*James B. Maxwell, for plaintiff appellee.*

*Clayton, Myrick & McClanahan, by Robert W. Myrick and Robert D. McClanahan, for defendant appellant.*

BECTON, Judge.

I

Plaintiff-wife, Shirley Patton, filed her complaint against defendant-husband, David Patton, on 5 February 1982, seeking a *pendente lite* award of alimony, custody, child support, and attorney's fees. The trial court entered an order awarding the wife custody of the children, possession of the marital residence, $500 per month child support, $500 per month alimony *pendente lite*, and $4,000 in attorney's fees. The husband filed an answer and counterclaim in which he sought an absolute divorce. The wife filed a reply and cross-action, wherein an equitable distribution of marital property was sought. A judgment of absolute divorce was entered on 1 December 1983, reserving the issues of child support, alimony, attorney's fees, and equitable distribution.

The reserved issues came on for hearing in May and June of 1984, and by judgment entered 28 August 1984, the wife was awarded $1,000 per month permanent alimony on grounds of abandonment, $500 per month child support, the marital residence and personalty contained therein, and $3,000 attorney's fees. The husband was awarded his interest in two businesses, any retirement money taken from these businesses, and any personalty already removed from the marital residence. Husband filed a post-hearing motion to alter, amend or modify this judgment, which was denied. From the order entered on the reserved issues and from the order denying his post-hearing motion, husband appeals, alleging that the trial court committed reversible error in (1) concluding the wife was abandoned by the husband; (2) failing

to specifically find the husband's income at the time of the hearing; (3) making certain findings relating to the equitable distribution of marital assets; (4) awarding attorney's fees; and (5) denying the husband's post-hearing motion. We find no merit in any of these arguments with the exception of the award of attorney's fees. We remand this cause so that proper findings of fact can be made on the attorney's fees issue.

## II

The parties were married in Pennsylvania in 1959. They had four children, one of whom was still a minor at the time of the hearing. When they married, husband had received his college degree and had begun his career as a teacher. Shortly thereafter, the wife received her degree in elementary education, and for the first few years of the marriage was employed in that field. From about 1963 until she took a part-time job in the year before their separation, the wife worked as a homemaker. In 1962, the family moved to Durham, North Carolina, where the husband took a job selling industrial products. In 1966, the husband started an industrial equipment supply company called Patco, Inc., along with his brother Richard. The husband's involvement with Patco as both vice-president and sales representative constituted both his primary business interest and the primary source of income for the parties throughout the marriage.

Although the parties described the history of their marital relationship somewhat differently, they generally agreed that there had been some good and happy times interspersed with unhappy ones and crises; that they had discussed separation on several occasions before 1981; and that from about 1980 on, the relationship began to seriously deteriorate. This deterioration culminated on 8 March 1981 when, upon husband's return from the ACC Basketball Tournament, the wife confronted him with her suspicions that he was involved with another woman. Husband left the marital home that night and has not resided there since.

## III

[1]  The husband first contends that the trial court erred in concluding that he abandoned his wife. N.C. Gen. Stat. Sec. 50-16.2(4) (1984) provides that a dependent spouse is entitled to alimony

when the supporting spouse abandons the dependent spouse. Abandonment is a legal conclusion which must be based upon factual findings supported by competent evidence. *See Steele v. Steele*, 36 N.C. App. 601, 244 S.E. 2d 466 (1978). Although there is no statutory definition of abandonment, it has been judicially defined thus:

> One spouse abandons the other, within the meaning of the statute, where he or she brings their cohabitation to an end without justification, without the consent of the other spouse and without intent of renewing it.

*Panhorst v. Panhorst*, 277 N.C. 664, 670-71, 178 S.E. 2d 387, 392 (1971). The burden of proof as to each of the elements of abandonment is on the party seeking alimony. *Heilman v. Heilman*, 24 N.C. App. 11, 210 S.E. 2d 69 (1974). Each case must be determined in large measure upon its own particular circumstances. *Tan v. Tan*, 49 N.C. App. 516, 272 S.E. 2d 11 (1980), *disc. rev. denied*, 302 N.C. 402, 279 S.E. 2d 356 (1981).

Although there is no dispute that the husband had no intent to return to the marital home after 8 March 1981, he contends that the evidence conclusively shows justification for his departure and his wife's consent thereto. Conceding that an "all-embracing" definition cannot be formulated, our Supreme Court has made the following comments on justification:

> Ordinarily, . . . the withdrawing spouse is not justified in leaving the other unless the conduct of the latter is such as would likely render it impossible for the withdrawing spouse to continue the marital relation with safety, health, and self-respect . . . .

*Caddell v. Caddell*, 236 N.C. 686, 691, 73 S.E. 2d 923, 926 (1953). The evidence in this case at most discloses a marital relationship that was sometimes rocky and a sexual relationship which, in the husband's estimation, left something to be desired. It does not reveal a situation which the husband was compelled to leave for reasons of "safety, health, and self-respect."

By way of contrast, in *Heilman*, the evidence showed a nonexistent sex life, a wife deeply hypercritical of her mate, and a husband whose stomach ailments and insomnia disappeared when he left the marital home. According to this Court, "all of the

evidence [depicted] a marriage totally lacking in conjugal harmony," 24 N.C. App. at 16, 210 S.E. 2d at 72, and supported a finding of justification. At bar, the trial court's findings, based upon competent evidence, were that throughout the marriage the wife was a capable homemaker and good mother; that the couple enjoyed recreational activities with family and mutual friends; and that when problems arose in the relationship, the wife sought counseling for the couple. Thus, the wife met her burden of proof for lack of justification for the husband's departure.

On the issue of the wife's consent to her husband's departure, the following findings of fact made by the trial court are pertinent:

> Sensing there were difficulties in the marriage and beginning in May of 1980, the [wife] sought counselling. . . . At the request of his wife, the [husband] attended a couple of the sessions, but no more [, w]hile the [wife] continued, both prior to and subsequent to the separation that occurred, to seek counselling in efforts to try to determine if there were methods by which she could take steps so that the marriage could be improved or saved.

> \*   \*   \*

> After being confronted by the [wife] with the jewelry [men's jewelry that wife had never seen before, including a gold bracelet engraved with initials other than her own] and other matters upon his return from the ACC Basketball Tournament, the [husband] left the family home on or about March 8, 1981, and moved to an apartment.

> \*   \*   \*

> The [wife] wanted to avoid the separation and to seek methods by which the marriage could be improved or saved. She did indicate to the [husband] that they were either going to "be married" or "not be married" during their discussions immediately prior to and subsequent to the separation of the parties. She wanted the [husband] to either choose to commit to the marriage, his wife and family, and work at establishing their former relationship, or to make a complete and clean separation with the family. To this end, the wife continued

her counselling to try and preserve the marriage even after the separation had occurred.

These findings receive support from evidence in the record and are, in our opinion, sufficient to support a conclusion that the husband abandoned the wife without just cause or provocation. The fact that the record contained evidence that would have supported a contrary conclusion is irrelevant. Nor are we persuaded by the husband's argument that because the wife had, in effect, given him an ultimatum to either faithfully commit to the marriage or to "make a clean break," that as a legal matter she consented to the termination of their cohabitation. In this regard we emphasize the findings that the wife continued her attempts to preserve the marriage even after the separation.

## IV

[2] The husband next contends that it was reversible error for the trial court not to have made a specific finding as to his income at the date of the hearing in setting child support and alimony. It is true that the income of the supporting spouse is one among a number of factors that is required to be given "due regard" by the trial court in setting both alimony and child support. N.C. Gen. Stat. Sec. 50-16.5(a) (1984) (alimony); N.C. Gen. Stat. Sec. 50-13.4(c) (1984) (child support). "Due regard" has been interpreted to require specific findings on the statutorily enumerated factors. *See Steele v. Steele*, 36 N.C. App. 601, 244 S.E. 2d 466 (1978) (alimony); *Newman v. Newman*, 64 N.C. App. 125, 306 S.E. 2d 540, *disc. rev. denied*, 309 N.C. 822, 310 S.E. 2d 351 (1983) (child support). The finding pertaining to the income of the supporting spouse must be based on that spouse's "present income," *Holt v. Holt*, 29 N.C. App. 124, 223 S.E. 2d 542 (1976) (child support), his or her income "at the time the award is made." *Beall v. Beall*, 290 N.C. 669, 228 S.E. 2d 407 (1976) (alimony). Although it is clear that a proper finding must be based on present, as opposed to past, income, we are aware of no rule that requires a specific finding as to the income of the supporting spouse on the precise date of the hearing.

At bar, the trial court made findings of fact as to husband's gross income in the years 1978 through 1982; money received from a Patco profit-sharing plan in 1982; the amount of money deposited in his personal checking account in 1983; and per-

quisites he enjoys from Patco, such as an entertainment budget and use of a car. The court also found that the financial prospects of Patco were excellent, that the number of employees had remained stable in 1984, and that husband's present wife is currently employed by Patco at a salary of $1,000 per month. In our opinion, these findings amply fulfilled the trial court's obligation to determine the husband's "present" income. The trial court took careful regard not only of the husband's salary, but of the various financial benefits he enjoyed as a result of his ownership interest in Patco.

Furthermore, the only evidence bearing upon the husband's income that the trial court did not incorporate into the factual findings is evidence introduced by the husband of his net income in March and April of 1984. The March figure is comparable to the average monthly income for the previous years; the April figure shows only a slight decline.[1] Although we do not feel the trial court was bound to include this evidence, the husband was not prejudiced by its omission, as it tended only to show that his income remained relatively stable. This assignment of error is overruled.

· V

[3] The husband next contends that the trial court erred in finding that the value of his interest in Patco was $85,000 and that he was the sole, or 96%, owner of that business. This contention is without merit.

The husband's business interest in Patco was one of two major marital assets subject to equitable distribution in this case, the other being the marital residence. While the value of the home was stipulated to, the value of Patco was contested. The trial court's finding on the value of Patco reads as follows:

34. That in evaluating the defendant's/husband's share of Patco, Inc., the Court has considered the estimate of the defendant himself as given in an insurance application approximately six months prior to the separation of the parties (plaintiff's Exhibit 10), the book value of the business in 1980

---

1. We note that an affidavit filed with husband's post-hearing motion reflects a net income for the month of April 1984 greater than the figure before the trial court during the hearing, and comparable to monthly income from previous years.

through November, 1984, the relative ownerships of the stock in the company in 1980 through 1984 (it being noted that the defendant is the sole (or 96%) stockholder of the company, having purchased the interest of his brother with the company redeeming his stock by treasury stock), has considered the capitalization of earnings of the company, has considered the earning capacity of the company as demonstrated in the last four-to-five year period of time, the present economic outlook for the business and industry, the good will which has been accumulated to the business through the hard work and competent efforts of the defendant, and the financial position of Patco, Inc., as demonstrated by its unaudited statements for 1980 through April 30, 1984. The value of the defendant's interest in Patco, after consideration of all these factors, at the relevant time for evaluation for equitable distribution in this matter was at least $85,000.

When a divorce is granted on the ground of a year's separation, the trial court is to determine the net market value of the marital assets as of the date of separation in order to effect an equitable distribution of these assets. N.C. Gen. Stat. Sec. 50-21(b) (1984); *Alexander v. Alexander*, 68 N.C. App. 548, 315 S.E. 2d 772 (1984). The trial court's findings concerning valuation, as are all factual findings in an equitable distribution order, are binding on appellate courts when supported by competent evidence. *See Alexander*. Therefore, we must determine whether any competent evidence supported the finding that the net value of the husband's interest in Patco on 8 March 1981 was $85,000.

First, the trial court specifically indicated that it took into account the value placed by the husband himself on his business interests in valuing Patco. Notably, the record contains an insurance proposal prepared by the husband in July 1980, wherein he valued his business interests at $215,000 and stated there were no liabilities. The wife argues that even when the husband's interest in his only other business, Wick & Leather, is subtracted (which interest the parties stipulated at $8,200), this still leaves over $200,000 as husband's admitted interest in Patco. Furthermore, the trial court did not limit itself to the figure contained in the insurance proposal, but took other relevant facts and circumstances into consideration. *See Poore v. Poore*, 75 N.C. App. 414, 331 S.E. 2d 266, *disc. rev. denied*, --- N.C. ---, 335 S.E. 2d 316 (1985) (good

will must be considered and valued in determining value of professional practice for equitable distribution); *Phillips v. Phillips*, 73 N.C. App. 68, 326 S.E. 2d 57 (1985) (examples of evidence useful in valuing closely-held corporation: gross sales, cost of goods sold, profit, operating expenses, income, retained earnings). It is true that evidence was introduced by the husband suggesting that his share of Patco was substantially less than $85,000. The trial court was not, however, bound to make its finding in accordance with the husband's evidence.

The husband makes two subsidiary arguments relating to the valuation of Patco: that the trial court incorrectly found he was the 96% owner of Patco, and that the trial court did not explicitly state it was making its valuation as of the date of separation. Since we have concluded that the trial court properly valued the husband's interest in Patco as of 8 March 1981 at $85,000, we fail to see how he may have been prejudiced by these alleged errors. In particular, the order stated that it was valuing husband's interest in Patco "at the relevant time for evaluation for equitable distribution." Although specifying the exact date of valuation might have been preferable, this finding does not demonstrate, nor has the husband otherwise shown, that the trial court used an incorrect date in valuation. *See Gregory v. Lynch*, 271 N.C. 198, 155 S.E. 2d 488 (1967) (burden of showing error always on party asserting same).

VI

[4] The husband also contends that the trial court committed reversible error in its distribution of the marital assets because the basis for the unequal distribution was not shown. Our Supreme Court has held that

> a party desiring an unequal division of marital property bear[s] the burden of producing evidence concerning one or more of the twelve factors in the statute and the burden of proving by a preponderance of the evidence than an equal distribution would not be equitable.

*White v. White*, 312 N.C. 770, 776, 324 S.E. 2d 829, 832 (1985). When a party has met its burden of proof and the court has concluded that an equal distribution would not be equitable, the court must make written findings, based upon relevant statutory

and nonstatutory factors, which support its conclusion that an equal distribution is not equitable. *See Little v. Little*, 74 N.C. App. 12, 327 S.E. 2d 283 (1985); *Alexander*. It may then equitably divide the marital property. *White*. The weight to be assigned to any factor in a given case is within the discretion of the trial court. *Id.*

In the case at bar, the order recites that the trial court "attempted to consider all the factors included" in G.S. Sec. 50-20(c). The trial court enumerated seven of the twelve factors in G.S. Sec. 50-20(c) to which it paid particular attention, and for each of these seven factors, made reference to factual findings in the order which contained information relevant to that particular statutory factor. Based upon these findings, the court concluded that an equal division of the marital assets would not be equitable, and proceeded to award the wife 58% of the marital estate and the husband, 42%. Our review of equitable distribution awards is limited to a determination of whether there has been a clear abuse of discretion. *White*. We find none here. *See Appelbe v. Appelbe*, --- N.C. App. ---, 330 S.E. 2d 57 (1985) (approving unequal division).

## VII

The husband's next contention is that the trial court committed reversible error in its award of attorney's fees. The record shows that the trial court awarded $3,000 in counsel fees to one of the wife's two attorneys for legal services rendered in connection with the child support and alimony aspects of the hearing. The wife made no claim for counsel fees for the other attorney, who had represented the wife at the earlier hearing on child support and alimony *pendente lite*, and to whom a prior order had awarded attorney's fees in the amount of $4,000.

## A

[5] The husband first challenges the current award on the ground that the wife had already received a $4,000 counsel fee at the earlier hearing, which enabled her to meet her husband on equal terms, and thus the current fee constitutes an impermissible "double award." N.C. Gen. Stat. Sec. 50-13.6 (1984) authorizes the recovery for counsel fees in child support actions; N.C. Gen. Stat. Sec. 50-16.4 (1984) makes them recoverable in actions for

permanent alimony. The fee awarded to the wife at the earlier hearing did not cover, nor was it intended to cover, any legal fees the wife might subsequently incur; the trial court specifically termed the earlier $4,000 award, "attorneys' fees *'pendente lite.'* " Multiple awards of counsel fees in the same domestic action are, in the proper circumstances, within the court's discretion to allow. *See Yow v. Yow*, 243 N.C. 79, 89 S.E. 2d 867 (1955); *see also Fungaroli v. Fungaroli*, 53 N.C. App. 270, 280 S.E. 2d 787 (1981) (attorney's fees allowable for services performed on appeal).

B

[6]   1. The husband also attacks the award of counsel fees on the ground that it was not supported by proper factual findings. Here, we agree with the husband. In order to establish entitlement to counsel fees in an alimony action, the dependent spouse must show, and the trial court must find, that: (1) the spouse is in fact a dependent spouse, (2) the dependent spouse is entitled to the relief demanded, and (3) the dependent spouse does not have sufficient means whereon to subsist during the prosecution of the suit and to defray the necessary expenses thereof. *Hudson v. Hudson*, 299 N.C. 465, 473, 263 S.E. 2d 719, 724 (1980); *Upchurch v. Upchurch*, 34 N.C. App. 658, 239 S.E. 2d 701 (1977), *disc. rev. denied*, 294 N.C. 363, 242 S.E. 2d 634 (1978). To establish entitlement to counsel fees in a child support action, the following findings are required: (1) the interested party is acting in good faith, (2) the interested party has insufficient means to defray the expenses of the suit, and (3) the party ordered to pay support has refused to provide support adequate under the circumstances existing at the time of the institution of the action or proceeding. *Hudson*, 299 N.C. at 472-73, 263 S.E. 2d at 723-24; *Quick v. Quick*, 67 N.C. App. 528, 313 S.E. 2d 233 (1984). Lacking sufficient means to defray the expenses of the suit has been interpreted to mean that the dependent spouse is not able as litigant to meet the supporting spouse as litigant on substantially even terms because the dependent spouse is financially unable to employ adequate counsel. *Hudson*, 299 N.C. at 474, 263 S.E. 2d at 725.

If a party establishes entitlement to attorney's fees in a given case, it is then within the trial court's discretion to award a reasonable fee. A proper order awarding counsel fees in a child support or alimony action must contain a finding or findings upon

which a determination of the reasonableness of the award can be based, such as the nature and scope of the legal services rendered and the time and skill required. *Austin v. Austin*, 12 N.C. App. 286, 183 S.E. 2d 420 (1971); *Falls v. Falls*, 52 N.C. App. 203, 278 S.E. 2d 546, *disc. rev. denied*, 304 N.C. 390, 285 S.E. 2d 831 (1981) (attorney's skill, hourly rate, its reasonableness in comparison with that of other attorneys, amount of time spent, what attorney did). When an award of counsel fees is made, whether the statutory requirements have been met is a question of law, reviewable on appeal. When these requirements have been met, the amount of the award is reviewable only for an abuse of discretion. *Hudson*.

2. We apply the foregoing legal principles to the relevant factual findings in the case before us and find them deficient in the following specific regards. As to child support, there is no finding that the supporting spouse refused to provide adequate support under circumstances existing at the time the action was initiated. *See Gibson v. Gibson*, 68 N.C. App. 566, 316 S.E. 2d 99 (1984) (remanding case for lack of such a finding). Although some findings were made concerning husband's provision of support after the separation, there is no indication whether such support was adequate, especially in light of husband's unilateral reduction of that support from time to time. As to both alimony and child support, there are no factual findings upon which a determination of the reasonableness of the award could be based, other than the trial court's statement the time expended was "reasonably necessary." *See Coleman v. Coleman*, 74 N.C. App. 494, 328 S.E. 2d 871 (1985) (portion of order awarding fee in alimony and child support case vacated; conclusory finding that attorney had rendered "valuable legal services" insufficient). The fact that the attorney's affidavit was received into evidence and examined by the trial court does not alter our result. *See Rogers v. Rogers*, 39 N.C. App. 635, 251 S.E. 2d 663 (1979) (vacating award of attorney's fees; court received detailed affidavit from attorney but failed to make findings as to reasonableness of attorney's fees incurred). For examples of findings sufficient upon which to base a determination of reasonableness, *see Fungaroli*, 53 N.C. App. at 274, 280 S.E. 2d at 790 (finding number 10); *Cornelison v. Cornelison*, 47 N.C. App. 91, 97, 266 S.E. 2d 707, 711 (1980).

## VIII

Finally, the husband argues that the trial court erred in denying his post-hearing motion to amend, alter or modify its judgment. Each of the grounds asserted in the motion relates to a matter we have already treated in this opinion and found to be free from error. This assignment of error is overruled.

## IX

Based on the foregoing, the judgment appealed from, except for that portion awarding attorney's fees, is affirmed. We remand this cause for proper findings of fact and entry of judgment on the issue of attorney's fees.

Affirmed in part and remanded.

Chief Judge HEDRICK concurs in part and dissents in part.

Judge PARKER concurs.

Chief Judge HEDRICK concurring in part and dissenting in part.

I concur in that part of the majority decision with respect to attorney's fees; however, I dissent from that part of the opinion that affirms the remainder of the trial court's judgment.

The majority states the question presented as whether the evidence supports the court's finding that the value of the husband's interest in Patco on 8 March 1981 was $85,000. In my opinion, the question presented is not only whether the evidence supports the valuation made but also whether the court made sufficient findings to support its valuation.

This Court has stated that the task of appellate courts in reviewing the value placed on a professional practice or business, or an interest therein, by a trial judge for purposes of equitable distribution, is to determine whether the approach used by the trial judge reasonably approximated the net value of the business, or the interest therein. *Poore v. Poore*, 75 N.C. App. 414, 331 S.E. 2d 266 (1985); *disc. rev. denied*, --- N.C. ---, 335 S.E. 2d 316 (1985); *Weaver v. Weaver*, 72 N.C. App. 409, 324 S.E. 2d 915 (1985). Various approaches or methods can be used to value such

businesses or interests; however, courts must value and consider the goodwill, if any, of the business in determining the value of the business or the interest therein. *Id.* To enable appellate courts to determine whether the trial judge properly or adequately valued the business or interest, the trial judge should make specific findings regarding the value of the business or the interest therein and the existence and value of the goodwill of the business, and should clearly indicate the evidence on which its valuations are based, preferably noting the valuation method or methods on which it relied. *Poore v. Poore, supra.* If it appears on appeal that the trial judge reasonably approximated the net value of the business or the interest therein and the value of the goodwill of the business, if any, based on competent evidence and on a sound valuation method or methods, the valuation will not be disturbed. *Id.*

I see no reason why the above propositions should not apply with equal force to the valuation of an interest in a closely-held corporation, such as the husband's interest here in Patco. In my opinion, the findings made by the trial court here regarding the value of the husband's interest in Patco are not sufficiently specific to enable us to determine whether the trial court reasonably approximated the value of that interest based on competent evidence and on a sound valuation method or methods. A mere finding, such as the one made by the trial court here, that the court has considered several relevant factors or acceptable valuation methods in determining the value of the interest without some greater specificity or indication of the particular evidence or valuation method or methods on which the court relied is not sufficient. While I realize that the requirement of specific findings of fact supporting the valuation of an interest such as the one concerned herein places a heavy burden on trial judges who are faced with the difficult task of valuing such interests, in my opinion such findings are essential to permit effective appellate review.

For these reasons, I conclude that the trial court did not make sufficient findings to support its valuation and that the judgment, insofar as it divides the marital property, should be vacated and the cause remanded for additional findings regarding the valuation of the husband's interest in Patco.