DONNA L. WALKER, Plaintiff v. MAURICE L. WALKER, Defendant

No. COA00-101

(Filed 15 May 2001)

**1. Pleadings— amendment—second—denied**

The trial court did not abuse its discretion in an action for alimony, child custody and support, and a domestic violence prevention order by denying defendant's motion for a second amendment to his answer. A party may amend his pleadings once as a matter of course under N.C.G.S. § 1A-1, Rule 15(a) before a responsive pleading is filed, but otherwise only by leave of the court. Refusal to grant leave to amend without any reason is abuse of discretion; here, the record showed that more than four years had passed since the original answer and first amendment and extensive discovery and numerous court proceedings had occurred in the interim.

**2. Appeal and Error— assignment of error—no supporting authority—abandoned**

An assignment of error concerning a sustained objection in a domestic action was abandoned where there was no supporting authority.

**3. Appeal and Error— preservation of issues—instructions— no objection**

An issue concerning a constructive abandonment instruction in a domestic action was not preserved for appeal where defendant objected to the omission of language on the burden of proof, the court promptly remedied any error, and defendant made no further objection concerning constructive abandonment.

**4. Divorce— alimony—constructive abandonment—sufficiency of evidence**

The trial court did not err by denying defendant's motions for a directed verdict and judgment notwithstanding the verdict on a permanent alimony claim where defendant contended that there was insufficient evidence of constructive abandonment but there was evidence presented that defendant drank excessively, would not come home after work, spent many weekends at the coast without his family, and was removed from the home due to violent behavior, while plaintiff cared for the home, did the yard work, and cared for the children.

**5. Appeal and Error— preservation of issues—inconsistent jury verdict—motion for new trial**

The question of whether a jury verdict was inconsistent was not properly preserved for appeal where there was no motion for a new trial.

**6. Divorce— alimony—amount—benefits received through company**

The trial court did not abuse its discretion in the amount of alimony awarded where the court properly considered benefits defendant received through his company.

**7. Divorce— attorney fees—sufficiency of evidence**

The trial court did not abuse its discretion in a domestic action by awarding plaintiff partial attorney's fees where the main asset plaintiff received in the equitable distribution was the marital home, which included a $1,200 per month mortgage payment; the marital home was subject to foreclosure at the time of the trial; plaintiff received a cash distributive award of $69,265.63 to equalize the division of marital property, paid in monthly installments; defendant was in child support arrears by more than $7,600; defendant had provided no alimony support to plaintiff prior to the award of counsel fees; plaintiff did not have substantial stock and bond holdings at the time of trial; plaintiff had an imputed gross income of $1,400 per month and defendant a gross income of $5,417 per month; and defendant received ownership of a business valued at $234,000.

Defendant appeals from judgment entered by the Honorable William L. Daisy in Guilford County District Court on 30 August 1999, *nunc pro tunc* 20 May 1999. Heard in the Court of Appeals 15 February 2001.

*Morgenstern & Bonuomo, P.L.L.C., by Barbara R. Morgenstern, for plaintiff-appellee.*

*Hatfield & Hatfield, by Kathryn K. Hatfield, for defendant-appellant.*

TYSON, Judge.

Plaintiff and defendant were married on 26 January 1979. On 16 April 1994, the parties separated when an emergency domestic violence protective order removed defendant from the marital home.

On 18 April 1994, plaintiff brought this action, and sought *inter alia*, custody of the parties' two minor children, child support, alimony, domestic violence protective relief and attorney's fees. On 20 June 1994, defendant filed an answer and counterclaim, and sought *inter alia*, custody, restraining orders and an interim distribution. On 18 July 1994, defendant amended his answer and counterclaim, and added a prayer for divorce from bed and board. On 17 July 1995, a judgment of absolute divorce was entered. On 22 February 1996, an equitable distribution judgment was entered. The issues of permanent alimony and attorney's fees remained pending for adjudication.

On 14 December 1998, defendant filed a second motion to amend his answer, and sought to add the defense of plaintiff's alleged pre-divorce adultery. This motion was heard and denied at the pretrial conference on 17 May 1999.

From 17 through 20 May 1999, a jury trial was held on the issue of permanent alimony. The jury heard testimony regarding alleged verbal abuse, physical abuse, drug use, heavy drinking and accusations of adultery by both parties.

Defendant was self-employed, as the one hundred percent shareholder of GRS, Inc. ("GRS"). Evidence was introduced that defendant earned $107,755.00 in 1998, $65,500.00 in 1997, and $55,500.00 in 1996 as an employee of GRS. GRS purchased a $32,000.00 vehicle for defendant's use after the separation. GRS paid for defendant's health insurance, all expenses related to his vehicle, and some of his personal entertainment expenses. Defendant also purchased a $50,000.00 boat, and contributed $8,400.00 per year to his retirement account. Defendant's second wife was paid $1,646.00 per month by GRS, and drove a vehicle paid for by GRS.

Plaintiff was responsible primarily for homemaking and child rearing duties during the marriage. Plaintiff also assisted with the clerical and administrative duties at GRS during the marriage. From the parties' separation during April 1994 until May 1997, both minor children resided with plaintiff. In May 1997, the parties' older child began residing with defendant. Plaintiff testified that she was employed part-time, but was seeking full-time employment. Plaintiff also testified that she incurred approximately $15,000.00 in debt to pay for expenses after the separation, and that the debt on the marital home was in foreclosure.

Defendant orally moved for directed verdict at the conclusion of plaintiff's evidence. This motion was denied. The jury found that defendant had not committed indignities toward plaintiff, but had constructively abandoned her. The jury further found that plaintiff had not committed either indignities toward, or abandonment of defendant. Defendant orally moved for judgment notwithstanding the verdict. The motion was also denied.

The trial court entered an order and judgment on 30 August 1999, *nunc pro tunc* 20 May 1999, requiring defendant to pay child support arrearages, prospective child support, alimony and counsel fees. Defendant appeals.

---

Defendant appeals six issues to this Court: (1) whether the trial court abused its discretion in denying defendant's second motion to amend his answer; (2) whether the trial court erred by sustaining plaintiff's objection to a question posed to a defense witness; (3) whether the trial court improperly instructed the jury on the issue of constructive abandonment; (4) whether the trial court erred in denying defendant's motion for a directed verdict or judgment notwithstanding the verdict; (5) whether the trial court erred in awarding plaintiff $1,800.00 per month alimony; and (6) whether the trial court erred in ordering defendant to pay plaintiff's attorney's fees in the amount of $7,500.00.

### 1. Amendment to the Answer

[1] Defendant argues that the trial court erred by denying his motion to amend his answer and counterclaim to allege plaintiff's alleged pre-divorce adultery. Under the law applicable to this case, former N.C.G.S. § 50-16.6, plaintiff's pre-divorce adultery would be a bar to her alimony claim.

N.C.G.S. § 1A-1, Rule 15(a) (1999) provides, in pertinent part:

**Amendments.** A party may amend his pleadings once as a matter of course at any time before a responsive pleading is served . . . Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

In the present case, defendant's second amendment was allowable only by leave of court. A motion to amend the pleadings is addressed to the trial judge's sound discretion. *Coffey v. Coffey*, 94 N.C. App. 717, 722, 381 S.E.2d 467, 471, *disc. review allowed*, 325 N.C. 705, 388

S.E.2d 450 (1989), *disc. review improvidently allowed,* 326 N.C. 586, 391 S.E.2d 40 (1990). The trial judge's decision will not be disturbed on appeal absent showing an abuse of discretion. *Henry v. Deen,* 310 N.C. 75, 82, 310 S.E.2d 326, 331 (1984).

"[O]utright refusal to grant the leave (to amend) without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion . . . ." *Foman v. Davis,* 371 U.S. 178, 182, 9 L. Ed. 2d 222, 226 (1962). Factors to be considered by the trial judge in deciding whether to grant or deny a motion to amend include delay, bad faith, undue prejudice, and the futility of amendment. *See Patrick v. Williams,* 102 N.C. App. 355, 360, 402 S.E.2d 452, 455 (1991) (trial court did not err in denying defendants' motion to amend their answer where defendants filed the motion almost a full year after filing the answer and after both parties had conducted extensive discovery); *Hudspeth v. Bunzey,* 35 N.C. App. 231, 241 S.E.2d 119 (1978) (trial judge did not abuse his discretion in denying defendant's motion to amend after defendant waited 16 months to file the motion to amend); *House Healers Restorations, Inc. v. Ball,* 112 N.C. App. 783, 437 S.E.2d 383 (1993) (trial judge did not abuse discretion in denying plaintiff's motion to amend where plaintiffs waited one year and three months after filing their complaint).

In the present case, over four years had passed since the filing of the first amendment to defendant's answer. In denying the motion to amend, the trial judge found:

> Absent there being any direct evidence of adultery, I'm going to deny the motion. It's been too many years to do an information and opportunity evidentiary hearing from 1994.

The record in this case shows that: (1) defendant amended his answer once, (2) that over four years had passed since the original answer and first amendment was filed, and (3) that extensive discovery and numerous court proceedings had occurred in the interim. We hold that the trial judge did not abuse his discretion in denying defendant's second motion to amend his answer that was heard on the eve of trial.

## 2. Questioning of Mr. Gerringer

**[2]** Defendant next assigns as error the decision of the trial court to sustain plaintiff's objection to a question posed to a witness, Roger Gerringer. Defendant cites no authority to support his position that

sustaining this objection was error. Thus this assignment of error is deemed abandoned. *See* N.C.R. App. P. 28(b)(5) (assignments of error "in support of which no . . . authority [is] cited, will be taken as abandoned."). *See Also Metric Constructors, Inc. v. Industrial Risk Insurers*, 102 N.C. App. 59, 64, 401 S.E.2d 126, 129, *aff'd*, 330 N.C. 439, 410 S.E.2d 392 (1991) ("[b]ecause the appellee cites no authority for this argument, it is deemed abandoned.").

### 3. Jury Instruction on "Constructive Abandonment"

**[3]** Defendant argues that the trial court committed error when it charged the jury on the issue of constructive abandonment. After the jury was charged, defendant objected to the omission of language from the pattern jury instruction on the issue of burden of proof. The trial court promptly remedied any error. However, the record reveals defendant made no further objection to the trial court concerning the constructive abandonment instruction to the jury. Rule 10(b)(2) of the North Carolina Rules of Appellate Procedure provides:

> **Jury instructions; Findings and Conclusions of Judge.** A party may not assign as error any portion of the jury charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly that to which he objects and the grounds of his objection; provided, that opportunity was given to the party to make the objection out of the hearing of the jury, and, on request of any party, out of the presence of the jury.

Defendant did not preserve this issue for appeal. *See State v. Howie*, 116 N.C. App. 609, 612, 448 S.E.2d 867, 869 (1994) (pursuant to N.C.R. App. P. 10(b)(2), failure to object to a jury charge normally precludes review of the issue). This assignment of error is overruled.

### 4. Denial of Defendant's Motions for Directed Verdict and Judgment Notwithstanding the Verdict

**[4]** Defendant's fourth assignment of error is the trial court's denial of defendant's Rule 50(a) and (b) motions for directed verdict and judgment notwithstanding the verdict. Defendant made an oral motion at the conclusion of plaintiff's evidence that the case be dismissed due to insufficient evidence to support a claim for permanent alimony. The trial court denied the motion.

Upon return of a jury verdict in favor of plaintiff, defendant made the following oral motion:

Judge, I'd like to make a motion pursuant to Rule 50 and ask that—Rule 50 and ask for a judgment notwithstanding the verdict; that the verdict that the jury came back with finding that Mr. Walker abandoned Ms. Walker be set aside in that the jury also found that Mr. Walker did not commit indignities and that abandonment would be an indignity, and therefore it's—since he did not physically leave the place, he was put out by the sheriff, so it has to be constructive abandonment that the court found because he didn't leave. He was put out by her, so it has to be constructive abandonment. If the jury found that he did not commit indignities, that is, they found no to issue one, it would be inconsistent to find yes to issue two.

The purpose of a motion for a directed verdict pursuant to Rule 50 is to test the legal sufficiency of the evidence. *Allison v. Food Lion, Inc.*, 84 N.C. App. 251, 352 S.E.2d 256 (1987). "The motion for judgment notwithstanding the verdict is technically only a renewal of the motion for a directed verdict made at the close of all the evidence, and thus movant cannot assert grounds not included in the motion for directed verdict." *Love v. Pressley*, 34 N.C. App. 503, 511, 239 S.E.2d 574, 580 (1977), *disc. rev. denied*, 294 N.C. 441, 241 S.E.2d 843 (1978) (*citing House of Koscot Development Corp. v. American Line Cosmetics, Inc.*, 468 F. 2d 64 (5th Cir., 1972)).

Defendant contends that there was insufficient evidence to find that he abandoned plaintiff. Defendant first contends that he could not have actually abandoned plaintiff because he was forcibly removed from the marital home pursuant to a Chapter 50B emergency protective order. We agree. However, the fact that defendant did not voluntarily leave the residence does not preclude a verdict in favor of plaintiff on the issue of constructive abandonment.

In *Somerset v. Somerset*, 3 N.C. App. 473, 165 S.E.2d 33 (1969), the plaintiff-wife sought alimony and divorce from bed and board from defendant on the grounds of indignities and abandonment. The defendant-husband had previously been ordered to move out of the marital home by the court due to his behavior towards the plaintiff. The defendant in *Somerset* argued that because he left the home involuntarily, he did not abandon her. *Id.* at 475, 165 S.E.2d at 34. Rejecting this argument this Court held:

We perceive no reason why plaintiff's seeking the aid of the Domestic Relations Court should detract from her cause of action. It was for the jury to determine whether defendant's con-

duct prior to the order of the Domestic Relations Court would justify plaintiff in seeking the aid of the Courts and thereby constitute a constructive abandonment by him. Defendant cannot hide behind the order which his own improper conduct brought about.

*Id.* at 476, 165 S.E.2d at 35.

In the present case, defendant also argues that there was insufficient evidence to go to the jury on the issue of constructive abandonment.

It is the well-established rule that in determining the sufficiency of evidence to withstand a defendant's motions for directed verdict and for judgment notwithstanding the verdict, all the evidence which supports the plaintiffs' claim must be taken as true and considered in the light most favorable to them, giving them the benefit of every reasonable inference which may legitimately be drawn therefrom, and resolving contradictions, conflicts and inconsistencies in their favor.

*Love,* 34 N.C. App. at 511, 239 S.E.2d at 580 (citation omitted). In this case, evidence was presented that defendant drank excessively, would not come home in the evenings after work, spent many weekends at the coast without his family, and was removed from the home due to his violent behavior towards plaintiff. Evidence was also presented that plaintiff cared for the home, did the yard work, and tended to the children. Applying the above test to these facts, the trial court did not err in denying defendant's motions for directed verdict and judgment notwithstanding the verdict based on the sufficiency of the evidence.

**[5]** Furthermore, in defendant's motion purportedly for judgment notwithstanding the verdict under Rule 50(b), defendant sought to have the verdict set aside as the findings of the jury were inconsistent. Where the jury's answers to the issues are allegedly contradictory, a motion for a new trial under Rule 59 is the appropriate motion. *See Palmer v. Jennette,* 227 N.C. 377, 379, 42 S.E.2d 345, 347 (1947) (if the jury verdict is inconsistent, then it is not the practice of the Court to enter a judgment notwithstanding the verdict "[w]here the answers to the issues are so contradictory as to invalidate the judgment, the practice of the Court is to grant a new trial . . . because of the evident confusion.").

In *Love*, defendant made a Rule 50 motion for judgment notwithstanding the verdict seeking "to have the verdict set aside as against the greater weight of the evidence, and to have the verdicts as to damages for conversion of personal property and for mental suffering set aside on the grounds that they were excessive." *Love*, 34 N.C. App. at 510, 239 S.E.2d at 579. This Court held that:

> The asserted grounds are proper grounds for a motion for a new trial under Rules 59(a)(7) and 59(a)(6) respectively; however, no such motion appears in the record. For this reason . . . these questions are not properly presented for review on appeal of the denial of defendant's motion for judgment notwithstanding the verdict.

*Id.*

In *Musgrave v. Savings & Loan Assoc.*, 8 N.C. App. 385, 174 S.E.2d 820 (1970), the trial court granted defendant's Rule 50 motion for judgment notwithstanding the verdict. This Court reversed the trial court and reinstated the jury verdict. *Id.* In so doing, this Court stated that a new trial may not be granted on appeal where defendant did not alternatively move for a new trial. *Id.* at 391-92, 174 S.E.2d at 824.

No motion by defendant for a new trial appears in the record. Therefore, the question of whether the verdict was inconsistent was not properly preserved for review on appeal. This assignment of error is overruled.

### 5. Alimony Award

[6] Defendant contends that the trial court erred by ordering defendant to pay alimony to the plaintiff in the amount of $1,800.00 per month. The amount of alimony awarded is determined by the trial judge's exercise of sound discretion. The award is not reviewable on appeal in the absence of an abuse of discretion. *Sayland v. Sayland*, 267 N.C. 378, 148 S.E.2d 218 (1966). In determining the amount of alimony, the trial judge must follow the requirements of the applicable statutes. *Quick v. Quick*, 305 N.C. 446, 453, 290 S.E.2d 653, 658 (1982). The statute which controls the determination of alimony in this case is former N.C.G.S. § 50-16.5.

> That statute provides that '[a]limony shall be in such amount as the circumstances render necessary, having due regard to the (1) estates, (2) earnings, (3) earning capacity, (4) condition, (5)

WALKER v. WALKER

[143 N.C. App. 414 (2001)]

accustomed standard of living of the parties, and (6) other facts of the particular case' . . . In other words, the statute requires a conclusion of law that 'circumstances render necessary' a designated amount of alimony. Our case law requires conclusions of law that the supporting spouse is able to pay the designated amount and that the amount is fair and just to all parties.

*Quick*, 305 N.C. at 453, 290 S.E.2d at 658-59. In awarding plaintiff $1,800.00 alimony per month, defendant concedes that the trial judge made sufficient conclusions of law to satisfy all of the required elements of N.C.G.S. § 50-16.5. However, defendant asserts that the conclusions of law are not supported by the actual findings of fact.

The trial judge made the following findings of fact: (1) defendant's net income is $3,598.00 per month, (2) defendant's reasonable expenses are $1,650.00 per month, (3) defendant owes $639.00 per month in child support, per the child support guidelines, (4) plaintiff's income is $1,040.00 per month, and (5) plaintiff's reasonable expenses are $2,320.00 per month. Defendant's total support obligation is $2,439.00 per month ($1,800.00 in alimony and $639.00 in child support). After paying his support obligation, defendant has funds of $1,159.00 available to "meet his own needs." The trial judge found that defendant's reasonable needs are $1,650.00 per month, resulting in a monthly shortfall of $491.00. Defendant contends that this finding was error. We disagree.

In *Ahern v. Ahern*, 63 N.C. App. 728, 306 S.E.2d 140 (1983), this Court upheld an award of $25,000.00 per year in alimony despite the plaintiff-husband's testimony that his salary was only $31,500.00 per year. In *Ahern*, plaintiff owned his own business and established his own salary. The evidence revealed that the parties owned a $175,000.00 marital home and marketable securities of $110,000.00. Plaintiff's company had retained earnings of $125,000.00 and his equity in his company was appraised at $412,000.00. Plaintiff's company provided him with an expensive automobile, and paid for all associated expenses. Plaintiff's company also paid for several expensive vacations. Based on this evidence, this Court held that plaintiff's real income was greater than the salary he received, and he therefore had means to pay the alimony awarded. *See also Patton v. Patton*, 78 N.C. App. 247, 337 S.E.2d 607 (1985) (it is proper for trial court to take regard not only of husband's salary, but also of the various financial benefits he enjoyed as a result of his ownership interest in his own company).

As in *Ahern* and *Patton*, the trial court properly considered defendant's financial benefits, such as health insurance, vehicle and reimbursed expenses received through his company when calculating the amount of alimony owed to plaintiff. The trial court did not abuse its discretion in awarding alimony in the amount of $1,800.00 per month to plaintiff. This assignment of error is overruled.

### 6. Attorney's Fees

**[7]** Defendant also contends that the trial court erred in awarding attorney's fees to plaintiff. Plaintiff presented an affidavit requesting an award of attorney's fees and expenses in an amount exceeding $11,000.00. The trial court awarded plaintiff partial attorney's fees in the amount of $7,500.00.

To justify an award of attorney's fees, it must be determined "that (1) the spouse is entitled to the relief demanded; (2) the spouse is a dependent spouse; and (3) the dependent spouse has not sufficient means whereon to subsist during the prosecution of the suit and to defray the necessary expenses thereof." *Hudson v. Hudson*, 299 N.C. 465, 473, 263 S.E.2d 58, 67 (1980) (citation omitted). "Whether these requirements have been met is a question of law that is reviewable on appeal, and if counsel fees are properly awarded, the amount of the award rests within the sound discretion of the trial judge and is reviewable on appeal only for an abuse of discretion." *Clark v. Clark*, 301 N.C. 123, 136, 271 S.E.2d 58, 67 (1980). In awarding partial attorney's fees to plaintiff, the trial judge made findings of fact and conclusions of law consistent with these requirements. Defendant argues that the trial court erred in determining that plaintiff did not possess sufficient means to defray the expense of the suit.

Defendant cites *Rickert v. Rickert*, 282 N.C. 373, 193 S.E.2d 79 (1972), in support of his contention that plaintiff was improperly awarded attorney fees. In *Rickert*, our Supreme Court reversed an award of $8,500.00 in attorney fees to the dependent spouse. *Rickert's* facts are quite different from the present case.

In *Rickert*, a consent judgment had been in effect by which plaintiff-wife was awarded alimony in the amount of $600 per month and the sum of $200 per month for child support at the time of the entry of the order allowing counsel fees.

This same judgment awarded plaintiff the use of the homeplace together with all personal property located therein free of ad val-

orem property taxes. She was awarded a 1970 Pontiac convertible automobile and the privilege of enjoying the family membership in the Biltmore Country Club. *Most significantly, the record reveals that plaintiff owned stocks and bonds valued at $141,362.50 and had an annual income therefrom in the amount of $2,253.*

*Id.* at 382, 193 S.E.2d at 84 (emphasis supplied).

In the present case, the main asset plaintiff received at equitable distribution was the marital home, including a $1,200.00 per month mortgage payment. The debt on the marital home was the subject of a foreclosure proceeding at the time of the trial. *See Cobb v. Cobb*, 79 N.C. App. 592, 339 S.E.2d 825 (1986) (attorney fees awarded where the wife would be forced to sell her only remaining asset, the marital home). Plaintiff received a cash distributive award of $69,265.63 to equalize the division of marital property, which defendant paid in monthly payments. Unlike the defendant in *Rickert*, defendant was adjudged to be in child support arrears by more than $7,600.00. Unlike the defendant in *Rickert*, defendant had provided no alimony support to plaintiff prior to the award of counsel fees. Most significantly, unlike the plaintiff in *Rickert*, plaintiff did not have substantial stock and bond holdings at the time of trial. Plaintiff was found to have an imputed gross income of $1,040.00 per month. Defendant was found to have a gross income of $5,417.00 per month. He received ownership of the business, valued at $234,000.00.

There was sufficient evidence to support the trial court's findings that plaintiff was a dependant spouse, who was entitled to the relief sought, and who had insufficient means to defray the costs of the lawsuit. The trial court did not abuse its discretion in awarding plaintiff partial attorney's fees.

No error.

Judges MARTIN and TIMMONS-GOODSON concur.