McGEE, Judge.
 

 Plaintiff and defendant were married on 29 October 1994. The parties adopted one child in 1993 and another child was born to the parties in 1996. Plaintiff filed a complaint on 7 August 2000 seeking child custody and support, postseparation support, alimony, a temporary restraining order and preliminary injunction, and attorneys' fees. Defendant filed a motion to dismiss, an answer, and a counterclaim on 6 September 2000. In his counterclaim, defendant sought child custody and support, an immediate custody order, a psychological evaluation, and equitable distribution of the marital property. Plaintiff and defendant were divorced on 4March 2002.
 

 The trial court entered an equitable distribution judgment and order in which all the marital debt, totaling $637,641.80, was distributed to defendant. Plaintiff was awarded a distributive award in the amount of $358,719.08. Plaintiff was ordered to execute a quitclaim deed to the former marital home to defendant. Defendant was ordered to then immediately place the home on the market and to pay plaintiff the net proceeds from the sale. The balance of the distributive award was to be paid in monthly installments beginning on 1 May 2006 and in an amount of no less than $2,000, excluding interest. Interest on the distributive award was set at eight percent, and interest payments were due monthly, beginning 1 June 2003.
 

 Instead of selling the former marital home to a third party, defendant purchased the marital home for himself and his new wife. The marital home was appraised at $990,000. Defendant took out a first mortgage of $643,500, and a second mortgage of $215,000, which was to pay down the distributive award at a lower interest rate. Prior to purchasing the former marital home, defendant was living in a home he owned, and for which his employer paid the mortgage and utility expenses. In addition, defendant and his new wife owned two other houses.
 

 A hearing on alimony, child support and attorneys' fees was held on 11 July, 15 July and 21 August 2003. In an order entered 4 November 2003, defendant was ordered to pay $1,483 per month in child support; $3,578 per month in alimony, for thirty-six months;$3,881.46 to purge himself of civil contempt for failure to comply with a previous interim support order; $4,000 in reimbursement to plaintiff for the attorney's fees of C.R. "Skip" Long, Jr. (Mr. Long); $7,500 in reimbursement to plaintiff for the attorney's fees of A. Doyle Early, Jr. (Mr. Early); and $7,520 in child support arrearage. Defendant appeals.
 

 I.
 

 We first review defendant's argument regarding the amount of alimony awarded by the trial court. If a trial court finds that "the supporting spouse participated in an act of illicit sexual behavior . . . during the marriage and prior to or on the date of separation, then the [trial] court shall order that alimony be paid to a dependent spouse."
 
 N.C. Gen. Stat. § 50-16
 
 .3A(a) (2003). In this case, defendant does not challenge that he is the supporting spouse, and he stipulated at trial to having engaged in illicit sexual behavior prior to or on the date of separation. Consequently, the trial court was required to award alimony to plaintiff.
 
 See Williamson v. Williamson,
 

 142 N.C. App. 702
 
 , 703,
 
 543 S.E.2d 897
 
 , 897 (2001). Defendant however assigns error on several grounds as to the amount of alimony awarded by the trial court.
 

 When awarding alimony, a trial court must consider the sixteen factors set forth in
 
 N.C. Gen. Stat. § 50-16
 
 .3A(b)(1)-(16).
 
 Friend-Novorska v. Novorska,
 

 143 N.C. App. 387
 
 , 394,
 
 545 S.E.2d 788
 
 , 793,
 
 aff'd,
 

 354 N.C. 564
 
 ,
 
 556 S.E.2d 294
 
 (2001). "In determining the amount of alimony . . . to be awarded the trial[court] must follow the applicable statutes. The amount is . . . to be determined by [the trial court's] sound judicial discretion[.]"
 
 Beall v. Beall,
 

 290 N.C. 669
 
 , 673-74,
 
 228 S.E.2d 407
 
 , 410 (1976). The trial court's determination of the amount of alimony will not be upset absent a "manifest abuse of that discretion."
 
 Bookholt v. Bookholt,
 

 136 N.C. App. 247
 
 , 249-50,
 
 523 S.E.2d 729
 
 , 731 (1999). While the determination of the amount of an alimony award is a question of "fairness and justice" to the parties,
 
 Beall,
 

 290 N.C. at 674
 
 ,
 
 228 S.E.2d at 410
 
 , it is also "designed to enable the dependent spouse to achieve the standard of living she or he enjoyed during the marriage."
 
 Barham v. Barham,
 

 127 N.C. App. 20
 
 , 30,
 
 487 S.E.2d 774
 
 , 780 (1997),
 
 aff'd,
 

 347 N.C. 570
 
 ,
 
 494 S.E.2d 763
 
 (1998).
 

 Defendant argues that the trial court abused its discretion by ordering defendant to pay alimony in an amount that exceeds his ability to pay. Defendant first argues that the trial court erred despite finding that his monthly expenses were reasonable. In the alimony order, the trial court found in finding of fact number ten that:
 

 Based upon the defendant's financial affidavit, he has $10,000 in monthly income, $3,700 in taxes, $3,785 in shared family expenses and $1,876 in individual expenses, which he contends leaves him with a surplus of $639 per month, not including listed additional in-kind income of $1,625 per month. The Court finds, however, that the defendant's expenses
 
 are not reasonable
 
 in that after the Equitable Distribution Judgment/Order was entered and the distributive award determined, the defendant and his new wife decided to purchase the marital home for $799,000 and borrowed a total of $858,500 to purchase thehome and pay down the distributive award at a lower interest rate. The defendant has attempted to maintain his standard of living while the plaintiff's standard of living has been substantially reduced and the defendant has increased his debt from $637,641.80 to $858,500 and included this debt service in his expenses. The defendant had a choice to sell the marital home and pay off all the marital debt allocated to him of $637,641.80 and then to obtain reasonable housing in accordance with the defendant's economic circumstances at that time.
 

 (emphasis added).
 

 In contrast, when later considering the statutory factors in
 
 N.C. Gen. Stat. § 50-16
 
 .3A(b)(1)-(16), the trial court found in finding of fact number eighteen that:
 

 The relative needs of the spouses - The defendant has reasonable needs of $5,661 per month and the plaintiff has reasonable needs of $4,167 per month.
 

 Defendant contends, and plaintiff does not refute, that the figure $5,661 represents the total of defendant's individual expenses of $1,876 and shared expenses of $3,785, which include the mortgage payments for the purchase of the former marital home.
 

 Defendant argues that based on finding of fact number eighteen, the trial court found defendant's expenses of $5,661, and the monthly payments for the mortgages on the former marital home, to be reasonable. Plaintiff responds that the trial court made a clerical error and "clearly meant to state that the defendant 'contends that he' has reasonable need[s] of $5,661" per month.
 

 When a trial court's findings of fact are so contradictory that this Court cannot "'safely and accurately decide the question,'" we cannot affirm the trial court's judgment.
 
 Spencerv. Spencer,
 

 70 N.C. App. 159
 
 , 168,
 
 319 S.E.2d 636
 
 , 643-44 (1984) (quoting
 
 Lackey v. Board of Education,
 

 257 N.C. 78
 
 , 84,
 
 125 S.E.2d 343
 
 , 347 (1962)). "However, this Court must endeavor to reconcile apparently inconsistent findings and uphold the judgment when practicable."
 
 Id.
 
 at 168,
 
 319 S.E.2d at 644
 
 . In this case, we find that the trial court's earlier, more specific, finding of fact, is controlling. In finding of fact number ten, the trial court described at great length why it found defendant's expenses to be unreasonable. We see no need to give the trial court's cursory statement in finding of fact number eighteen enough weight to merit a reversal. We also find instructive the narrative of trial testimony, on which the trial court's order plainly relied. The narrative of trial testimony states:
 

 The relative needs of the spouses - The plaintiff and defendant testified as to what they
 
 contended
 
 were their reasonable needs.
 

 (emphasis added).
 

 Considering the trial court's more specific earlier finding and the trial testimony on which the trial court's order was based, we reconcile the trial court's inconsistent findings and hold that the trial court found as fact that defendant's expenses were unreasonable.
 

 Defendant next argues that even if the trial court found that defendant's expenses were unreasonable, the alimony order must be vacated because the trial court did not state exactly which expenses it considered unreasonable. Plaintiff responds that since the trial court specifically referred to the housing expensesdefendant assumed after purchasing the former marital home, "no ambiguity exists when the order is considered in its entirety." We agree with plaintiff. The trial court was very clear when it delineated that it found defendant's assumption of debt by purchasing the marital home to be unreasonable.
 

 Defendant next contends the trial court erred by ordering him to pay alimony in an amount that leaves him with a shortfall each month. Defendant argues that his monthly income is $10,000, his monthly taxes are $3,700, and his monthly expenses are $5,661. Defendant argues that as a result he has a monthly surplus of only $639. Defendant further argues that the total amount of his monthly child support obligation of $1,483 and monthly alimony obligation of $3,578 exceeds this $639 surplus.
 

 We first note that defendant makes several misstatements in his calculation. Defendant admitted in his financial affidavit that he has a monthly income of $11,625 per month: $10,000 in draw and $1,625 in benefits. Defendant's financial affidavit also only
 
 estimated
 
 his taxes to equal $3,700 per month; the estimation did not take into account various deductions, including those for defendant's alimony payments, and defendant had not yet filed his 2002 or 2003 tax returns. Furthermore, the operating agreement of defendant's employer, AEA, provides that AEA will pay defendant's taxes. Finally, as discussed above, the trial court did not find defendant's monthly expenses to be reasonable.
 

 In addition to defendant's miscalculation, we do not find that the alimony order leaving defendant with a shortfall requiresreversal of the trial court's alimony award. Our Court previously upheld alimony awards that left supporting spouses with a shortfall or very limited funds when the evidence showed that the supporting spouse received other substantial financial benefits from the supporting spouse's employer.
 
 Walker v. Walker,
 

 143 N.C. App. 414
 
 ,
 
 546 S.E.2d 625
 
 (2001);
 
 Ahern v. Ahern,
 

 63 N.C. App. 728
 
 ,
 
 306 S.E.2d 140
 
 (1983).
 

 In
 
 Walker,
 
 the supporting spouse argued that the trial court erred by ordering him to pay alimony that left him with a $491 shortfall per month.
 
 Walker,
 

 143 N.C. App. at 423
 
 ,
 
 546 S.E.2d at 631
 
 . In addition to his salary, the supporting spouse received various financial benefits from his employer, including health insurance, all expenses related to his vehicle, personal entertainment expenses, and a vehicle for his new wife.
 
 Id.
 
 at 416,
 
 546 S.E.2d at 627
 
 . We held that "the trial court properly considered [the supporting spouse's] financial benefits . . . received through his company when calculating the amount of alimony owed to [his wife]" and that the trial court did not abuse its discretion by ordering alimony that left the supporting spouse with a shortfall each month.
 
 Id.
 
 at 424,
 
 546 S.E.2d at 631
 
 .
 

 Similarly, in
 
 Ahern,
 
 we upheld a $25,000 per year alimony award when the supporting spouse's salary was only $31,500 per year.
 
 Ahern,
 

 63 N.C. App. at 729-30
 
 ,
 
 306 S.E.2d at 142
 
 . We found that the evidence showed that the supporting spouse's "real earnings and income greatly exceed[ed] his designated salary," since he had other financial benefits including $125,000 inretained earnings, equity in his company worth $412,000, memberships at social clubs, expensive vacations, and vehicle expenses.
 
 Id.
 
 at 730,
 
 306 S.E.2d at 142
 
 .
 
 See also Patton v. Patton,
 

 78 N.C. App. 247
 
 , 253-54,
 
 337 S.E.2d 607
 
 , 611 (1985),
 
 rev'd in part on other grounds,
 

 318 N.C. 404
 
 ,
 
 348 S.E.2d 593
 
 (1986) (holding that when determining the supporting husband's income, the trial court properly took account of various financial benefits he received as sole owner of his business).
 

 In this case, the evidence showed that by purchasing the former marital home, defendant assumed additional debt. Defendant chose to purchase the former marital home despite his admitted ability to live in one of three other houses he and his new wife owned, one for which the mortgage and utilities were paid by his employer. Defendant also testified that he is entitled to principal and interest payments on a $197,000 debt AEA owes him. Defendant admitted that payments were suspended in November 2001, but he has not taken any steps to collect the interest or principal payments on this debt. Prior to suspension of the payments, defendant had been receiving principal repayment of $4,750 per month and interest payments in the amount of $4,750 per month, for a total of $9,500 per month. When asked by the trial court why AEA stopped paying interest on the note, defendant replied, "I don't know." Finally, AEA's operating agreement provides that AEA will pay defendant's taxes. Much of this was noted by the trial court in finding of fact number eighteen:
 

 The Court has previously considered the defendant's intent to try to maintain hisstandard of living, his acquiring of substantial additional debt to try to buy the marital home and to pay down the distributive award at a lower interest rate, the fact that the defendant owns another home and his new wife owns two (2) other homes where the parties may have lived, and the failure of the defendant to take any action to collect principal or interest payments on the substantial debt owed by AEA to defendant[.]
 

 Accordingly, we find that the trial court properly evaluated defendant's income and financial benefits and did not abuse its discretion in the amount of alimony awarded.
 

 Finally, defendant presents in his brief what he describes as a "fictitious 'best case scenario'" where he argues that even had he not purchased the former marital home, he would be unable to afford the ordered monthly alimony payments. However, by defendant's own admission, this scenario is fictitious, and it is not supported by any cited authority. Moreover, by virtue of this argument defendant asks this Court to assume facts not in evidence and to make new findings of fact. Also, this argument does not take into account the financial benefits defendant is entitled to receive from his employer. We find that defendant's argument is merely an "attempt to reargue the evidence in the hope that [this Court] will substitute itself for the trial court and accept defendant's version of the . . . story."
 
 Beall,
 

 290 N.C. at 672
 
 ,
 
 228 S.E.2d at 409
 
 . We overrule this assignment of error.
 

 II.
 

 Defendant next assigns error to two of the trial court's findings of fact, arguing that they are not supported by the evidence and "necessarily affect the alimony award." Indetermining whether a trial court's findings of fact are supported by the evidence, we examine "whether the findings are supported by
 
 any
 
 competent evidence in the record."
 
 Nix v. Nix,
 

 80 N.C. App. 110
 
 , 112,
 
 341 S.E.2d 116
 
 , 118 (1986).
 

 A.
 

 Defendant argues that finding of fact number seven is not supported by the evidence:
 

 [I]n addition to the defendant's draw of $10,000 per month, the Court finds that the defendant has received during the first part of 2003 monthly benefits from AEA [defendant's employer] as follows:
 

 . . . .
 

 Health insurance: $847.00
 

 Health insurance: $515.00
 

 Defendant argues that the evidence at trial more accurately showed that defendant only received $515 in health insurance benefits per month. Defendant points to the testimony of Phenie Bowen (Ms. Bowen), AEA's controller. Ms. Bowen testified that health insurance benefits for plaintiff, defendant, and their children totaled $847 per month. She testified that health insurance benefits for defendant and the children only totaled $515 per month. Defendant argues that he no longer carries plaintiff on his insurance plan so that this finding of fact overstates his income by $847 per month.
 

 Although we agree that the trial court's finding of fact overstates defendant's income, the evidence in the record shows that defendant did in fact carry plaintiff on his health plan for the first six months of 2003; thereafter, he only carried himselfand his children. Therefore, the trial court's finding of fact only overstates defendant's income "during the first part of 2003" by $515 per month.
 

 Plaintiff argues that the trial court's error was harmless since the $515 per month is more than offset by the $800 per month that defendant admitted to receiving in unearned income. The trial court acknowledged this income when considering the statutory factors in finding of fact number eighteen:
 

 The amount and sources of earned and unearned income of both spouses including, but not limited to, earnings, dividends, and benefits such as medical, retirement, insurance, social security, or other - The defendant receives unearned income in the sum of $800 per month[.]
 

 Despite its acknowledgment of this $800 in income, the trial court omitted it in its calculation in finding of fact number seven.
 

 We find that the trial court's error was harmless. The $515 in benefits overstated by the trial court is more than offset by defendant's own testimony and the trial court's finding of fact that defendant received unearned income in the sum of $800 per month. The trial court's error was harmless and did not affect the alimony award.
 

 B.
 

 Defendant next assigns error to the trial court's finding of fact that defendant increased his indebtedness from $637,641.80 to $858,500.
 

 Defendant argues first that the trial court understated his original indebtedness. In the equitable distribution order, all ofthe marital debt, in the amount of $637,641.80, was distributed to defendant. Defendant was also ordered to pay a distributive award of $358,719.08. Defendant argues that the trial court failed to take the distributive award into account when stating his original indebtedness and argues that his original indebtedness was actually $996,360.88 (the total of the marital debt plus the distributive award). Defendant states that when he bought the former marital home for $799,000, he took out two mortgages in a total amount of $858,500 in order to pay off the distributive award at a lower interest rate. Defendant claims that by assuming these mortgages he actually reduced his total indebtedness by purchasing the former marital home.
 

 Although we recognize that the trial court did not take the distributive award into account when calculating defendant's indebtedness, we disagree that defendant actually reduced his total indebtedness. Defendant's above calculation leads to the erroneous conclusion that all of the debt from the distributive award was absorbed by the two mortgages on the marital home. In actuality, the evidence, including defendant's own testimony, shows that he assumed only the second mortgage in the amount of $215,000 for the purpose of paying down the distributive award. Defendant thus still owed plaintiff $143,719.08 (the total distributive award of $358,719.08 minus $215,000). When taking the distributive award into account in assessing defendant's total debt, defendant's new total debt is actually $1,002,219.08 (the total of $858,500 in mortgages on the former marital home and the remaining $143,719.08owed to plaintiff for the distributive award). As a result, and contrary to his contention, defendant did increase his overall indebtedness.
 

 We also disagree that any error the trial court made in calculating defendant's entire indebtedness requires reversal of the alimony award. Defendant argues that the trial court's misstatement of his entire indebtedness necessarily affects the alimony award because the trial court "condemns" defendant for increasing his amount of debt. Although the trial court did consider defendant's increase in debt unreasonable, we do not find that any error in the calculation of defendant's total debt affected the alimony award. The trial court clearly found that defendant's increase of debt in the amount of $3,052 per month in mortgage payments was unreasonable when defendant had his choice of three other homes in which to live, including one for which his employer paid the mortgage and utilities. It was not the actual dollar amount of defendant's indebtedness that the trial court relied on in making its alimony award, but rather defendant's attempt to maintain his standard of living while plaintiff's standard of living was substantially reduced. We find that any error in the calculation of defendant's total indebtedness did not affect the alimony award requiring reversal of the trial court's order.
 

 III.
 

 Defendant next assigns error to the trial court's finding that plaintiff's expenses for the upkeep of plaintiff's new home werereasonable. Since defendant only assigns error to these expenses, the reasonableness of plaintiff's other expenses are deemed conclusive.
 
 Phillips v. Phillips,
 

 83 N.C. App. 228
 
 , 228,
 
 349 S.E.2d 397
 
 , 398 (1986) (stating that findings of fact not excepted to are conclusive on appeal). At the time of trial, plaintiff and the children had been living with plaintiff's parents since defendant had purchased the former marital home. Plaintiff had an initial closing date for the purchase of a new, 2,500 square foot home on 31 July 2003. Plaintiff's anticipated reasonable and necessary expenses amounted to $5,649; $864.00 of this amount was to be used for the upkeep of the new home. The evidence at trial showed that the monthly upkeep of the 7,500 square foot former marital home amounted to $794.26.
 

 Defendant argues that the costs for upkeep of plaintiff's home were speculative, since plaintiff had not yet lived in the home. Defendant also argues that plaintiff's anticipated reasonable and necessary expenses were contrary to common sense because they exceeded the amount needed for upkeep of the larger former marital home. Defendant contends that due to these errors, the alimony award was necessarily affected, meriting reversal.
 

 "The determination of what constitutes the reasonable needs and expenses of a party in an alimony action is within the discretion of the trial [court], and [the trial court] is not required to accept at face value the assertion of living expenses offered by the litigants themselves."
 
 Whedon v. Whedon,
 

 58 N.C. App. 524
 
 , 529,
 
 294 S.E.2d 29
 
 , 32,
 
 disc. review denied,
 
 306 N.C.752,
 
 295 S.E.2d 764
 
 (1982). We have held that this discretion allows the trial court to "resort to [its] own common sense and every-day experiences in calculating the reasonable needs and expenses of the parties."
 
 Bookholt,
 

 136 N.C. App. at 250
 
 ,
 
 523 S.E.2d at 731
 
 . Defendant offers no evidence other than the size difference of the former marital home as to the "real" cost of living in the smaller home. We find that the trial court properly relied on its own common sense and experience when determining plaintiff's reasonable needs and did not abuse its discretion.
 

 Even assuming
 
 arguendo
 
 that the trial court did err by finding that the cost to upkeep plaintiff's home amounted to $846, the error was harmless. Plaintiff's total claimed monthly expenses were $5,649, but the trial court found that her reasonable needs were only $4,167 per month. Plaintiff is thus receiving $1,482 less than she anticipated she would need, which more than makes up for the only amount defendant challenges on appeal, $846. As a result, any error does not require that the alimony award be reversed.
 

 IV.
 

 In his last assignment of error, defendant argues that the trial court erred by ordering defendant to reimburse plaintiff for the attorney's fees she incurred for Mr. Long's representation.
 

 The trial court made the following findings of fact:
 

 The plaintiff has had two attorneys retained by her to assist her in this matter, including [Mr. Long] and [Mr. Early]. Mr. Long has spent 62 hours at $180 an hour, for a total of $11,160 in representation of the plaintiff in this matter. Mr. Long filed theoriginal pleadings in this matter and represented the plaintiff in the custody matter and also in the obtaining of postseparation support and child support as obtained in the Interim Support Order dated January 2, 2001. The undersigned Judge did not preside over any hearings in which Mr. Long represented the plaintiff. Mr. Long has submitted an affidavit itemizing the services rendered, including client interviews, research, preparation of pleadings, discussion with opposing counsel, trial preparation, time in court for child custody, child support, postseparation support and mediation. None of the time was expended in matters relating to equitable distribution except for a portion of a time in mediation. Mr. Long is a Board Certified Specialist in the area of family law and has many years of experience in the field.
 

 . . . Both Mr. Long and Mr. Early are experts in the area of family law and based upon their skill, expertise and experience and the comparable rates charged by other comparable attorneys in the community, their hourly rates are reasonable and in consideration of the time and labor expended, the complexity of the issues and the results obtained, the total hours and fees are reasonable.
 

 The trial court thereafter ordered defendant to reimburse plaintiff $4,000 for Mr. Long's fees.
 

 A trial court may award attorneys' fees to a dependent spouse who is entitled to alimony upon application of such spouse,
 
 N.C. Gen. Stat. § 50-16.4
 
 (2003), but "attorneys' fees are not recoverable in an action for equitable distribution so that, in a combined action, the fees awarded must be attributable to work by the attorneys on the divorce, alimony and child support actions."
 
 Patterson v. Patterson,
 

 81 N.C. App. 255
 
 , 262,
 
 343 S.E.2d 595
 
 , 600 (1986). If the statutory requirements have been met, our review of the amount of an award of attorneys' fees is for an abuse ofdiscretion.
 
 Patton,
 

 78 N.C. App. at 259
 
 ,
 
 337 S.E.2d at 614
 
 .
 

 Defendant argues that Mr. Long did not participate in the alimony and child support hearing, and since Mr. Long did not appear before the trial court that entered the order which is the basis of this appeal, the trial court did not have the opportunity to question Mr. Long about his representation of plaintiff. Defendant claims that "[i]t was impossible for the trial court to then know (1) if Mr. Long's representation warranted attorney fees, and (2) if the fees awarded were reasonable." We disagree.
 

 Plaintiff introduced into evidence thirty-three pages of invoices detailing the work Mr. Long performed on her behalf. Plaintiff also introduced into evidence Mr. Long's affidavit detailing the amount of time spent on plaintiff's case, his hourly rate, and the work performed. The affidavit clearly states that Mr. Long "spent time in court for . . . child support." The record also reveals that Mr. Long performed work on plaintiff's behalf at the interim support proceeding, preliminary child support proceeding, and contempt action for violation of the interim support order. The record clearly shows that Mr. Long performed work on behalf of plaintiff for child support. We find that the trial court had sufficient evidence upon which to base an award of reimbursement for Mr. Long's fees.
 

 Defendant next argues that the trial court's finding of fact that Mr. Long spent a portion of time in mediation on equitable distribution matters precludes an award of reimbursement for Mr. Long's fees since "it is impossible to determine what amount oftime was actually committed to equitable distribution, and, whether the trial court properly refused to award attorney fees for that time." We disagree. The total amount Mr. Long billed to plaintiff was $11,160, but the trial court only awarded $4,000 for reimbursement of Mr. Long's fees. Furthermore, the record shows that Mr. Long's fee for the mediation was only $570.60. Since the trial court only ordered defendant to reimburse plaintiff for a fraction of Mr. Long's total fees, and did not necessarily order payment for time Mr. Long spent in mediation, we do not find an abuse of discretion.
 

 Defendant finally argues that "Mr. Long should properly raise his issues of attorney fees, on his own behalf, before a trial court in which he is representing [plaintiff]. For another attorney to represent the interests of Mr. Long in a hearing that Mr. Long did not participate is error." We find no merit in this argument. The trial court ordered defendant to reimburse plaintiff for Mr. Long's fees. The trial court did not order Mr. Long's fees to be payable directly to Mr. Long. Plaintiff's attorney was not representing the interests of Mr. Long, but the interests of plaintiff. There was no abuse of discretion.
 

 Defendant has failed to present an argument regarding his remaining assignments of error. Therefore, pursuant to N.C.R. App. P. 28(b)(6), these assignments of error are deemed abandoned.
 

 Plaintiff, in a separate motion to this Court, requests that we award her attorney's fees for this appeal. We have previously held that in an appeal from an alimony award, an award of attorney's fees for services performed on appeal should ordinarily be granted, provided the general statutory requirements for such an award are duly met, especially where the appeal is taken by the supporting spouse. This appears to be the majority rule, and there is nothing in our statutory or case law that would suggest that a dependent spouse in North Carolina is entitled to meet the supporting spouse on equal footing, in terms of adequate and suitable legal representation, at the trial level only. In sum, an award of counsel fees is appropriate whenever it is shown that the spouse is, in fact, dependent, is entitled to the relief demanded, and is without sufficient means whereon to subsist during the prosecution and defray the necessary expenses thereof.
 

 Fungaroli v. Fungaroli,
 

 53 N.C. App. 270
 
 , 273,
 
 280 S.E.2d 787
 
 , 790 (1981) (citations omitted);
 
 see also Whedon v. Whedon,
 

 313 N.C. 200
 
 , 208,
 
 328 S.E.2d 437
 
 , 442 (1985).
 

 In this case, defendant does not challenge that plaintiff is a dependent spouse, and we have determined that plaintiff is entitled to the relief she demanded. However, in order to receive attorney's fees for this appeal, it must be determined whether she is without sufficient means to afford such fees. We therefore remand to the trial court "to conduct a broad inquiry considering as relevant factors the nature and worth of the services rendered, the magnitude of the task imposed upon counsel, and reasonable consideration for the parties' respective conditions and financial circumstances."
 
 Id.
 
 at 208,
 
 328 S.E.2d at 442
 
 .
 

 Affirmed; and remanded for determination of attorney's fee.
 

 Judges BRYANT and THORNBURG concur.
 

 Report per Rule 30(e). Judge Thornburg concurred in this opinion prior to 31 December 2004.