IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA 22-702

Filed 15 August 2023

Wake County, No. 22 CVD 365

GANNA SHEPENYUK, Plaintiff,

v.

YOUSSEF ABDELILAH, Defendant.

Appeal by Plaintiff from an order entered 27 May 2022 by Judge J. Brian Ratledge in Wake County District Court. Heard in the Court of Appeals 25 January 2023.

*The Law Offices of Anton M. Lebedev, by Anton M. Lebedev, for the Plaintiff-Appellant.*

*Hatch, Little & Bunn, L.L.P., by Justin R. Apple, for the Defendant-Appellee.*

WOOD, Judge.

Ganna Shepenyuk ("Plaintiff") appeals an order granting Youssef Abdelilah's ("Defendant") Rule 12(b)(6) motion to dismiss and dismissing her complaint for postseparation support, alimony, equitable distribution, interim distribution, and attorney fees. After careful review of the record and applicable law, we affirm the order of the trial court.

## I. Factual and Procedural Background

Plaintiff and Defendant are former romantic partners who lived together. On 22 August 2015, the parties participated in a religious wedding ceremony in Virginia officiated by Defendant's brother, Mr. Kamal Abdelilah ("K. Abdelilah"). There is no evidence K. Abdelilah was ordained or legally authorized by law to officiate the ceremony. The parties never obtained a marriage license prior to or after the ceremony.

On 30 September 2021, Plaintiff filed a "Complaint and Motion for Domestic Violence Protective Order" ("DVPO Complaint") seeking an *ex parte* Domestic Violence Protective Order, as well as possession of the parties' residence. Plaintiff alleged she and Defendant are "persons of the opposite sex who are not married but live together or have lived together." In a statement attached to her DVPO Complaint, Plaintiff stated that she and Defendant "are not legally married, but [Defendant] does file taxes as jointly married . . . and uses the child support payments of [her] daughter to pay the bills." On 30 September 2021, Plaintiff obtained an *ex parte* DVPO against Defendant.

At the hearing on the DVPO on 14 October 2021, Plaintiff testified she and her "husband met back in 2013," and were "married on 22 August 2015." She further testified she and Defendant "were living for six plus years as husband and wife," called each other husband and wife, were known by "all [their] relatives, family, coworkers, [and] everybody . . . as a married couple," and "were raising four children together." Defendant testified he recently had found out they were not legally

married.

That same day, district court Judge Eagles entered a DVPO order finding the "parties had a religious marriage ceremony in Virginia several years ago. Both parties found out years later that their marriage was not considered a legal marriage by the State of Virginia. This has caused conflict regarding distribution of property and possession of the house." The court further found that "[m]any of Plaintiff's allegations appear to be false, based on testimony and evidence introduced, including allegations regarding finances, name calling, and controlling behavior" and that "Plaintiff's testimony lacks credibility." The court concluded Plaintiff "has failed to prove grounds for issuance of a domestic violence protective order" and dismissed the DVPO Complaint.

On 19 November 2021, Plaintiff filed a Petition for Partition of Real Property ("Petition for Partition") seeking a partition by sale of the residence where in the parties lived pursuant to N.C. Gen. Stat. § 46A-1. In this petition, Plaintiff stated she "is not currently legally married"; her marriage to Defendant "was void because the marriage license was never properly obtained"; and "the marriage ceremony took place in a State, where the minister may have lacked authority to hold the marriage ceremony." On 3 December 2021, Defendant filed an answer in which he admitted the parties "are not married and were never validly married."

On 11 January 2022, Plaintiff filed a verified complaint asserting equitable distribution and alimony claims, alleging the parties had an "implied partnership"

and "constructive marriage." Plaintiff further alleged she "has never seen a marriage license" and is "unsure whether [K.] Abdelilah was authorized to conduct the marriage ceremony in question."

On 9 February 2022, Plaintiff filed an amended complaint requesting that the parties be "presumptively treated as husband and wife" because a "marriage ceremony took place on 22 August 2015 at the Defendant's brother [K.] Abdelilah's, house in Virginia" and "after the marriage ceremony was performed, both parties believed that they were married to one another." Plaintiff again stated she "has never seen a marriage license" and remains "unsure whether [K.] Abdelilah was authorized to conduct the marriage ceremony in question." Plaintiff requested that the court deem "Plaintiff and Defendant married for the purpose of this action."

On 29 March 2022, Defendant filed a motion to dismiss Plaintiff's amended complaint pursuant to Rule 12(b)(6). Defendant alleged Plaintiff has actual knowledge that she and Defendant are not legally married. Furthermore, the motion alleged Plaintiff's own filings assert that the parties are not legally married, and thus, has failed to state a claim on which relief can be granted.

On 11 April 2022, Defendant filed an answer in response to Plaintiff's amended complaint and argued the doctrine of equitable estoppel bars Plaintiff from claiming the parties entered into a legal marriage because she previously alleged in court documents that she is not legally married to Defendant. Furthermore, Defendant claimed *res judicata* bars Plaintiff from relitigating her complaint because a North

Carolina court previously ruled on the issue of whether she and Defendant are legally married.

On 14 April 2022, the trial court heard Defendant's motion to dismiss. Plaintiff's counsel argued the principle of marriage by estoppel applied, asserting "as far as the complaint on its four corners, it alleges that there was a marriage ceremony, and alternatively it alleges that even if a marriage is void, the [c]ourt should still consider the marriage under – a marriage in estoppel, which is recognized in North Carolina." Plaintiff's counsel conceded a "marriage license was never filed in Virginia, and because [they believed] there might have been some improprieties of the way the marriage ceremony was conducted, they were not married." Plaintiff's counsel further acknowledged that in the DVPO order, "Judge Eagles made a finding that she doesn't believe they were married but she believes there was a marriage -- a religious marriage ceremony that occurred." Additionally, Plaintiff's counsel argued Defendant needed to file an annulment action in Virginia instead of a court in North Carolina because its "not this [c]ourt's job to interpret Virginia law and the validity of something that occurred in Virginia." Plaintiff's counsel conceded his client did not dispute the trial court's previous finding that the parties did not have a legal marriage in Virginia.

On 27 May 2022, the trial court entered an "Order Dismissing Plaintiff's Complaint for Postseparation Support, Alimony, Equitable Distribution, Interim Distribution and Attorney's Fees." The trial court took judicial notice of previous

court documents and found Plaintiff pleaded in the DVPO action, "the parties are, in fact, not married," and the trial court dismissed the DVPO action and noted the parties' marriage was not considered legal by the state of Virginia in its October 2021 order. The May 2022 order determined Plaintiff's complaint only alleged the date of the marriage ceremony, not the date of a legal marriage, so that the trial court was unable to grant relief based upon an equitable marriage theory.

On 1 June 2022, Plaintiff gave written notice of appeal, and filed an amended notice of appeal on 8 June 2022. Thus, the matter is properly before us on appeal.

## II.    Analysis

### A. Standard of Review

A trial court's order granting a Rule 12(b)(6) motion to dismiss is reviewed *de novo*. *Locklear v. Lanuti*, 176 N.C. App. 380, 384, 626 S.E.2d 711, 714 (2006). In our review of an order allowing a motion to dismiss we consider whether, as a matter of law, "the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory, whether properly labeled or not." *New Bar P'ship v. Martin*, 221 N.C. App. 302, 306, 729 S.E.2d 675, 680 (2012) (citation omitted). A motion to dismiss under Rule 12(b)(6) tests the complaint's legal sufficiency. *Sutton v. Duke*, 277 N.C. 94, 98, 176 S.E.2d 161, 163 (1970). Plaintiff's complaint is to be liberally construed, and "the court should not dismiss the complaint unless it appears beyond doubt that the plaintiff could prove no set of facts in support

of his claim which would entitle him to relief." *New Bar P'ship*, 221 N.C. at 306, 729 S.E.2d at 680 (citation omitted).

A complaint may be dismissed if it is clearly without merit. *Lee v. Paragon Group Contractors*, 78 N.C. App. 334, 337, 337 S.E.2d 132, 134 (1985) (citation omitted). A complaint is without merit if 1) there is an absence of law to support a claim of the sort made; 2) there is an absence of fact sufficient to make a good claim; or 3) there is the disclosure of some fact which will defeat a claim. *Home Elec. Co. v. Hall & Underdown Heating & Air Conditioning Co.*, 86 N.C. App. 540, 542, 358 S.E.2d 539, 540 (1987) (citation omitted). In ruling on a motion to dismiss, the trial court may take judicial notice of its own records in a prior or contemporaneous case without converting the motion to dismiss into a motion for summary judgment. *Funderburk v. JPMorgan Chase Bank, N.A.,* 241 N.C. App. 415, 420, 775 S.E.2d 1, 4 (2015) (citation omitted).

## B. The sufficiency of Plaintiff's complaint

Plaintiff first argues she sufficiently alleged claims of equitable distribution, alimony, and attorney's fees in her verified amended complaint to the trial court. Plaintiff contends she and Defendant should be presumptively treated as husband and wife due to a "marriage ceremony" which took place on 22 August 2015 in Virginia. Plaintiff cites to the trial court's previous finding that a religious marriage ceremony occurred between the parties and infers the principle of marriage by estoppel is applicable. Looking to Plaintiff's complaint, she alleges "after the

marriage ceremony was performed, both parties believed that they were married to one another." Plaintiff's complaint also claims the trial court previously determined the parties "had a religious marriage ceremony in Virginia several years ago. Both parties found out later that their marriage was not considered a legal marriage by [the] State of Virginia." Plaintiff's complaint further alleges, "the Plaintiff has never seen a marriage license" and that she is "still unsure whether [K.] Abdelilah was authorized to conduct the marriage ceremony in question."

The issue of the validity of a marriage under state law is generally governed by the law of the place of the celebration of the marriage. *See Adams v. Howerton,* 673 F.2d 1036, 1038-39 (9th Cir. 1982) (citations omitted); *Fungaroli v. Fungaroli*, 53 N.C. App. 270, 279, 280 S.E.2d 787, 793 (1981) ("[A] marriage valid where contracted is valid everywhere.") (citation omitted). We give full faith and credit to an out of state marriage if the union was valid in the state where the marriage ceremony took place. Therefore, we look to Virginia law in our determination of whether a valid marital relationship exists between the parties.

Marriage is a creation of state law. As such, it is in the power of the state to give the requirements of marriage. The United States Supreme Court has expressed:

> Marriage, as creating the most important relation in life, as having more to do with the morals and civilization of a people than any other institution, has always been subject to the control of the Legislature. That body prescribes the age at which parties may contract to marry, the procedure or form essential to constitute marriage, the duties and obligations it creates, its effects upon the property rights of

both, present and prospective, and the acts which may constitute grounds for its dissolution.

*Maynard v. Hill*, 125 U.S. 190, 205, 8 S. Ct. 723, 726, 31 L. Ed. 654, 657 (1888). Under Virginia law, marriage is a status involving public welfare; it is not merely a contract between two people. The Virginia Supreme Court has described the marriage institution as a relationship among three parties: the husband, the wife, and the Commonwealth. *Cramer v. Commonwealth*, 214 Va. 561, 202 S.E.2d 911, 914 (Va. 1974).

In determining the requirements for marriage, Virginia's General Assembly codified that "every marriage in this Commonwealth shall be under a license and solemnized in the manner herein provided." Va. Code Ann. § 20-13. Consistent with the plain language of the statute, the Supreme Court of Virginia previously has held "no marriage or attempted marriage, if it took place in this State, can be held valid here, unless it has been shown to have been under a license, and solemnized according to our statutes." *Offield v. Davis*, 100 Va. 250, 40 S.E. 910, 912 (Va. 1902). In *Offield*, when deciding the validity of common law marriages, Virginia's Supreme Court considered the legislative intent and reasons of public policy behind the statutory requirements of solemnization and a license. *Id.* at 40 S.E. at 913. The Court held it significant that the revisers of the legislative code included a note that these statutory requirements were intended to dissuade from common law marriages. *Id.* at 40 S.E. at 911.

The intent and purpose of the legislature regarding the requirements for a valid marriage plainly state that a marriage license is required. In the present case, Plaintiff's complaint alleges no valid marriage license exists, thereby making the marriage between Plaintiff and Defendant, on its face, invalid. Notwithstanding the parties' failure to obtain a marriage license, Plaintiff contends she and Defendant should be treated presumptively as husband and wife because a "marriage ceremony" took place in Virginia, on 22 August 2015. We decline to extend this presumption to the parties or apply the doctrine of equitable estoppel.

Virginia public policy "has been to uphold the validity of the marriage status for the best interest of society." *Needam v. Needam*, 183 Va. 681, 33 S.E.2d 288, 290 (Va. 1945). Thus, the presumption of the validity of a marriage ranks as "one of the strongest presumptions known to the law." *Eldred v. Eldred*, 97 Va. 606, 34 S.E. 477, 484 (Va. 1899). However, the presumption of marriage cannot be extended to these present circumstances. Plaintiff's conflicting statements in her court filings regarding her relationship with Defendant, and any presumption to be drawn therefrom, is refuted by the undisputed evidence of the nonexistence of a valid Virginia marriage license.

While the parties cohabitated, comingled their assets, held themselves out as married to the community, and filed joint tax returns, this evidence is insufficient to overcome Virginia's statutory requirements. The veracity of the evidence is in question where both parties have asserted repeatedly in their verified complaints and

answers, conflicting statements as to whether they are married. Additionally, Plaintiff concedes the officiant may not have had legal authority to officiate the wedding and neither party attempted to meet the legal requirements for their marriage under Va. Code Ann. § 20-13 or cure their mistake once notified of the requirements. We cannot presume to be true what Plaintiff herself does not profess true. There simply is not enough evidence to "create a foundation for the presumption of marriage." *Id.*

Next, Plaintiff requests we apply estoppel and estop Defendant from refuting the marriage. On appeal, Plaintiff contends she is lawfully married and acted in good faith on this belief. She changed her position in life to become a "homemaker," so as to take care of the home they lived in together and to care for Defendant's biological children, his mother, as well as his brother for nearly five years. While we recognize and are sympathetic to Plaintiff's circumstance, we do not find sufficient basis in Virginia's legal precedent to apply the theory of estoppel to marriage. Consequently, we decline to expand its application here.

In *Levick v. MacDougal*, a couple were married without a license, but were aware of the licensure requirement and, in fact, acquired a license several days after their marriage ceremony. 294 Va. 283, 805 S.E.2d 775, 777-78 (Va. 2017). The Virginia Supreme Court upheld the marriage after determining that the parties' intent to get a license was satisfactory since it is true that "every marriage in Virginia . . . be licensed and solemnized" according to Va. Code Ann. § 20-13. *Id*. at. 805 S.E.2d

at 779. Further, the Court's holding declined to address several contentions related

to the validity of marriages and left such scenarios unanswered. The Court stated:

> Our holding also renders moot a myriad of debates in this
> case on various other subjects, including:
> • whether Code § 20–13, if violated under this sequence of
> events, provides a mandatory, as opposed to a mere
> directory, statutory requirement;
> • whether a violation of Code § 20–13, if proven, could be
> cured by Code § 20–31;
> • whether an allegedly completed marriage, if found to be
> invalid and incurable, would be declared void ab initio, as
> the circuit court held, or merely voidable, as the Court of
> Appeals held;
> • whether a party in Levick's position would be precluded
> by the doctrines of equitable estoppel or laches from
> challenging the validity of his marriage; and
> •whether the marital agreement should be enforced
> despite a mistaken assumption by the parties at the time
> of executing it that their marriage was lawful.

*Id.* at 805 S.E.2d at 785-86. The Court further clarified that its "silence on these

underlying questions of law leaves them open for future debate and, thus, allows

them to be addressed in later cases in which they are ripe for decision." *Id.* at 805

S.E.2d at 786.

Although the Virginia Supreme Court has left situations like the present case

open for "future debate," we decline to apply legal principles that neither the Virginia

courts have interpreted, nor the Virginia legislature has addressed. Accordingly,

based upon the plain language of Va. Code Ann. § 20-13, the parties never entered

into a valid marriage under Virginia law. The parties did not meet the basic statutory

requirements for obtaining a valid marriage, nor did the parties at any point attempt

to comply with the statute by curing their failure to obtain a license. They simply never got one. Further, as Plaintiff notes, we are unaware whether the individual who officiated the religious ceremony was even authorized to do so. Because the parties did not adhere to Virginia's statute, their marriage is not valid in Virginia and consequently, not valid here. Therefore, we hold the trial court properly dismissed Plaintiff's complaint for postseparation support, alimony, equitable distribution, interim distribution, and attorney fees. We need not consider Plaintiff's other issues on appeal.

## III. Conclusion

For the above stated reasons, we affirm the trial court's order granting Defendant's motion to dismiss. The parties' marriage ceremony in Virginia did not result in a valid marriage because the parties failed to meet Virginia's statutory requirements. We decline to apply presumption of marriage or estoppel theories to the facts as presented in the record before us.

AFFIRMED.

Judges ARROWOOD and COLLINS concur.